## MANO SWARTZ vs. THE CITY AND SUBURBAN REALTY CO.

*No Right of Re-sale by Vendor of Land upon Default of Purchaser— Remedies for Breach of Contract to Buy Land.*

When the purchaser of real estate, after paying a part of the price and entering into possession, fails to pay the balance when due, the vendor is not entitled to re-sell the land at public sale at the risk of the purchaser and hold him liable for any deficiency.

Upon breach of a contract to buy land the person injured may sue either for specific performance or for damages, but he cannot have both remedies.

*Decided June 26th, 1907.*

Appeal from Circuit Court No. 2, of Baltimore City (WICKES, J.)

The cause was argued before BRISCOE, BOYD, PEARCE, SCHMUCKER, BURKE and ROGERS, JJ.

*Hyland P. Stewart*, for the appellant.

*Wm. C. Smith*, for the appellee.

BOYD, J., delivered the opinion of the Court.

This is an appeal from an order of Circuit Court No. 2, of

Baltimore City, dissolving an injunction. On August 21st, 1906, the appellant and the appellee entered into a written contract for the sale by the latter to the former of a property in Baltimore City, known as No. 3913 Park Heights avenue for the sum of $2,750, of which $25 had been paid prior to the signing of the agreement, and the balance was to be paid as follows: "Two hundred and fifty dollars on or before October 1st, 1906, said balance to be paid in installments of $325 every three months, and to be secured by second mortgage." The agreement further provided that "upon payment as above of the unpaid purchase money, a deed for the property shall be executed at the vendee's expense by the vendor, which shall convey the property by a good and merchantable title to the vendee. Taxes, water rent, ground rent, interest on encumbrances, if any, and rental of the premises to be apportioned or adjusted to the first day of September, 1906." It was also agreed that immediate possession of the premises be given, and the parties bound themselves "for the faithful performance of the agreement within—days of the date hereof, said time to be of the essence of this agreement."

On November 12th the appellant filed a bill in equity against the appellee setting up the agreement and alleging performance of all the requirements and conditions of the agreement on his part; that on or before the first day of October, 1906, he tendered himself ready to pay the balance of said purchase price upon the execution of the deed as required by the agreement; that the defendant then and at all times thereafter refused to convey to him a good and merchantable title to said property and still refuses so to do; that he has always been ready and willing to perform his part of the agreement and was still ready to do so, and tendered himself ready to pay the money to the defendant upon receiving a deed for the property in accordance with the terms of said written agreement, or to pay said money into Court to be paid over to the defendant upon the execution of such a deed as is required by said agreement.

It then alleges that in violation of the agreement the defen-

dant was endeavoring to sell said property, and as a final effort to defeat the plaintiff's rights had advertised it for public sale, through its attorney, to take place on November 15th, as appeared by a copy of the advertisement therewith filed. The bill prayed that the agreement be specifically enforced; that the defendant be decreed to convey the property to him in accordance therewith, upon payment of the balance of the purchase money still due and owing "as provided by said agreement," and that in the meantime the defendant be restrained by injunction from selling or otherwise disposing of the property until the further order of the Court, and for general relief.

The injunction was issued and the defendant answered. Its answer admitted the execution of the agreement, but denied the offer of the plaintiff to perform the contract, or his readiness to do so, and alleged demand by the defendant on the plaintiff at different times to comply with it; that the plaintiff promised that he would do so but set up different excuses and reasons from time to time; that on October 18th, 1906, the defendant, by letter of its attorney, notified the plaintiff that it was ready to execute a deed as per contract and further that unless he made payment in accordance with the terms thereof within two days it would sell the property at public sale at his risk, and hold him responsible for any loss that might be sustained by reason of the breach of the agreement; that in reply thereto plaintiff's counsel refused to accept the title and thereupon on October 25th, its attorney advertised the property "for sale on account of whom it may concern;" that the plaintiff delayed filing his bill until two days before the sale was to take place, for the purpose of delay, and it was not filed in good faith. The answer concludes by the defendant tendering itself ready and willing to convey by a good and sufficient deed title to the property, upon the payment of the moneys called for in said contract, and the execution of a proper second mortgage as provided in said contract, "and the payment of all costs and expenses to which the defendant has been put in these proceedings."

A motion was made to dissolve the injunction, which was set down for hearing, with leave to either party to take testimony before one of the Examiners of the Court. A considerable amount of testimony was taken and the day before it was returned exceptions were filed to the answer. Exceptions to testimony were filed by each side, and they as well as those to the answer were overruled, and the injunction was dissolved. From the order dissolving the injunction this appeal was taken.

The case is peculiar in several respects. In the first place the procedure adopted by the appellee was, to say the least, a very unusual one—offering the property at public auction "on account of whom it may concern." The only authority to sustain that course, which has been cited, is the recent case of *Regester* v. *Regester*, 104 Md. 1, but that was a sale of personal property (shares of stock in a corporation), which was still in the possession of the seller, who sold it at public auction and then sued the purchaser to recover the balance of the purchase money due. We sustained the second prayer, which recited the facts relied on by the plaintiff and instructed the jury that if they found those facts their verdict must be for the plaintiff for the balance due on the contract, after deducting amounts paid by the defendant and that realized at the sale, less the costs of making the sale which were allowed the plaintiff. JUDGE BURKE said "The doctrine upon which the instruction rests is abundantly supported by authority"—citing a number of cases and 2 *Parson's on Contracts* 483. The right to sell when the purchaser refused to accept articles sold to him, where there had been no delivery, was fully recognized in *Young* v. *Mertens*, 27 Md. 114. In 24 *Am. & Eng. Ency. of Law*, 1139, *etc.*, it is said that the rule in this country is that the seller of goods, where they are still in his possession, "may, if the buyer, without cause, refuses to accept and pay for the goods sold within a reasonable time, re-sell the same and recover as damages against the buyer the difference between the contract price and the amount realized upon the re-sale," and cases are cited from most of the States. The authors of the

Article on "Sales" in that volume then go on to show wherein the rule in England is different from that in this country. There is no question, however, about it in this State, with reference to personal property, but we are not aware of any decision which authorizes a vendor of real property, or chattels real, to thus sell and recover any balance that may be due from the vendee. Personal property in many instances would be lost or greatly deteriorated, and it might cause the seller consideral expense, if he was required to keep chattels or securities until litigation concerning them was ended. Indeed if the purchaser is insolvent it would oftentimes be the only remedy the seller would have, to save himself from a total loss of the value of the property. But real estate (and for the purposes of this opinion we include in that term chattels real) is not subject to such risks. A re-sale is one of the well-known remedies in this country of the seller of personal property, but if there is such a remedy in the case of real property it has never hitherto been recognized or adopted, as far as we are aware, in this State.

There is not only no occasion or necessity for such a proceeding when real estate or leasehold property is involved, but it would necessarily result in a sacrifice of the property in most instances, under conditions similar to those before us. This purchaser is in possession of the property and any one purchasing it at such a sale, as was proposed, would have to resort to an action of ejectment to obtain possession, while by a sale under a decree of the Court the statute provides a summary remedy. Then, when a decree is passed in such a proceeding the rights of the parties are determined, while in this case any purchaser would probably have bought a lawsuit and would have involved himself in costs and worry. Since the decision in *Brewer* v. *Herbert*, 30 Md. 301, it has been the law of this State that under such a contract as this, *in equity*, "from the time the owner of an estate enters into a binding agreement for its sale, he holds the same in trust for the purchaser, and the latter becomes a trustee of the purchase money for the vendor, and being thus in equity the owner, the vendee must

bear any loss which may happen, and is entitled to any benefit which may accrue to the estate in the interim between the agreement and the conveyance." The terms of the contract in that case were in effect the same as those in this—there the contract said "has this day sold" and here the appellee "does hereby bargain and sell," and the appellant "does hereby purchase." JUDGE MILLER said "By such terms the *title* in equity passes from the date of the contract," and he then went on to show that the fact that possession was to be given in the future (six months in that case, but immediately here) did not affect the question. See also *Skinner & Sons Co.* v. *Houghton*, 92 Md. 86, where other results of such sales are pointed out. It is true that this, being leasehold, was personal property but it is the character of property which is governed for the most part by the rules applicable to real estate. Those cases, as well as others cited in them, give ample reasons why the rule applied to ordinary personal property, such as chattels and securities, should not apply to real estate and chattels real. It would not only be likely to cause confusion in the land records, but, as we have said, there is no occasion or necessity for such a proceeding in a case of this character, as the law furnishes ample remedies. and beyond all that, and of still greater importance, it would be next to impossible to make such a sale as was proposed without sacrificing the interests of the other party to the contract to such an extent as a Court of equity would not permit. We are therefore of the opinon that the appellee had no right to settle the dispute between it and the appellant by making a sale itself, or through its attorney, at the risk of the appellant.

But having decided that, what is the effect of this proceeding? If it be conceded that the appellant would under such circumstances have the right to call upon a Court of equity to interfere, so that he could set up his equitable rights and prevent a sale of them, the right to an injuntion is not dependent upon that alone. We said above that the case was peculiar in several respects, and we have already pointed out what we regard as one of the peculiarities—the advertisement

of the property by the appellee for the purpose of selling it at the appellant's risk. The bill in this case is still more peculiar, in view of the testimony which has been taken. It not only alleges performance by the plaintiff of all the requirements and conditions of the agreement and that he had prior to October 1st, 1906, tendered himself ready to pay the balance and other matters in that paragraph, but it prays for a specific performance of the contract. In reply to the letter of Mr. Smith, attorney for the appellee, notifying the appellant that unless he made payment in accordance with the contract, the company would sell the property, Mr. Stewart, as attorney for the appellant, wrote amongst other things that "This lease of the property is subject to three restrictions which you cannot remove, and he will not accept the property subject to to such restrictions," and, after referring to the drainage, notified Mr. Smith that the appellant had sold the property at an advance of $130, that his purchaser refused to accept the title for the same reasons he had already given and that "unless you give him a title as called for by the contract within a week from this date" he would file a bill for specific performance and at the same time institute suit for damages for a breach of the contract. Just how both could have been sustained is not pointed out. It was said in *O'Keefe* v. *Irvington Co.*, 87 Md. 203, "It may well be conceded that upon breach of a contract to convey land, the person injured may sue either for specific performance or damages, and that if he proceeds for both on the whole case the Court will, on application, compel him to elect." The two proceedings are regarded in this State as inconsistent with one another. But the appellant did file his bill for specific performance, although his attorney stated in the letter that the appellee could not remove the restrictions objected to, and the appellant would not accept the property subject to them. The restrictions, etc., are also relied on in the brief of the appellant. How could the Court grant the prayer of the appellant for specific performance if the appellee could not remove the restrictions, and convey the property according to the

terms of the contract, as construed by the appellant?   There
is not a word said in the bill about the restrictions, any defect
in the title or the alleged nuisance by reason of the condition
of the drain, nor is there any alternative relief, by way of com-
pensation, prayed for.

When the bill was presented to the Judge who granted the
injunction he could only reach one conclusion from what is
stated in it, namely, that the defendant had refused to comply
with the contract, and, notwithstanding that, was about to sell
the property, but the testimony shows the contrary, as to the
defendant's refusal to comply.   The appellant not only did
not tender himself ready to pay the balance of the purchase
money, upon the execution of the deed as required by the
agreement, but, according to the evidence, after October 1st,
the date named in the contract for its settlement, he would
suggest first one difficulty, which would be met, and then
another, with an apparent intention to obtain delay.   There
can be no doubt that he either understood, or ought to have
understood, from what was told him before the contract was
made that the property was subject to a ground rent of $100
per annum, and the agreement itself showed that there was
some ground rent on the property.   So far as the restrictions
are concerned, the decided weight of the testimony shows
that he knew of them before the contract was made, and that
he admitted he did, when the parties and their counsel met on
October 18th to endeavor to adjust the matter.   Mr. Stewart
admitted in his testimony "Those little defects could have been
remedied"—referring to defects in the title—and he did not
even mention them at the interview above named.   There was
nothing said about the drain, either in the agreement or in the
bill, and the evidence now in the record does not show such
facts as would impose any obligation on the appellee to fix it.

The case of *Md. Con. Co.* v. *Kuper*, 90 Md. 529, disposes of
some of the objections urged by the appellant—such as whether
the appellee had title on October 1st, and similar questions,
but it is not shown how such questions arise in this case, when
the appellant, the purchaser, is asking for specific performance.

The case as presented does not show the appellant was entitled to an injunction for reasons we have given, and the Court below properly dissolved the one it had granted.    Parties cannot be granted such relief as that of an injunction, unless they disclose the facts which bear upon their right to it, and when a bill is as misleading as this is, as to the actual facts, the Court should not hesitate to dissolve an injunction when those facts are proven.    As the appeal is simply taken from the order dissolving the injunction, and the case had not been set down for final hearing, we will affirm the decree and remand the cause.

None of the reasons set out in the exceptions to the answer would authorize us to disturb the action of the Court thereon, unless possibly the sixth, and as to that we need only say that the affidavit referred to is not in the record, and the plaintiff should not be permitted to except to an answer after testimony has been taken, on a motion to dissolve an injunction, which is then about ready to be heard.    *Belt* v. *Blackburn*, 28 Md. 240; *Hutton & Co.* v. *Marx Bros.*, 69 Md. 256. Nor is there any exception to the testimony which would in any way affect our conclusion, if sustained.    Inasmuch as there is nothing said in the written contract about the restrictions it was undoubtedly permissible to prove by parol that the appellant understood that there were such restrictions. Many of the exceptions are too indefinite to enable us to determine what questions and answers are referred to.

*Order dissolving the injunction affirmed*
*and cause remanded, the appellant*
*to pay the costs.*