# STYERS ET UX. *v.* DICKEY

[No. 339, September Term, 1970.]

*Decided March 5, 1971.*

226

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, SINGLEY and SMITH, JJ.

*Richard B. Bland,* with whom were *Welsh & Lancaster* on the brief, for appellants.

No brief filed on behalf of appellee.

SMITH, J., delivered the opinion of the Court.

This case is an aftermath of *Styers v. Dickey,* 252 Md. 552, 250 A. 2d 615 (1969), in which we affirmed a declaratory decree determining that Dickey had marketable title to the real estate there involved. When appellee, J. Victor Dickey (Dickey), was unwilling to convey to appellants, C. Kenneth Styers and Betty Beckley Styers, his wife, (Styers) in accordance with what Styers conceived to be the contract between the parties, Styers sued for specific performance. We shall reverse the decree of the chancellor who dismissed the bill of complaint after granting a motion to dismiss at the end of the complainants' case.

On June 30, 1965, the parties entered into the following agreement:

> "In consideration of a deposit of Two Hundred & No/100 Dollars ($200.00), C. Kenneth Styers and Betty Beckley Styers shall have an option of purchasing Lots 1, 2, 3 and 4, Block 24, Oak Crest Subdivision, Prince George's County, Maryland, for a total sum of $4,800.
>
> "No further payment shall be required for a period of six months except interest and taxes

(which shall be paid monthly to seller). Thereafter payments of not less than Sixty Dollars ($60.00) a month on the 30th of each month @ six per cent interest.

"Privilege is reserved by the buyers to pay the balance in full at any time without penalty."

On December 29, 1965, Styers addressed a letter to Dickey notifying him of the exercise of the option. He forwarded a check in the amount of $83.00 and advised that title search and settlement would be handled "through Maryland State Savings and Loan Association as soon as possible." Styers was notified by Dickey as to the apportionment of the $83.00 payment to interest and taxes, with the remainder to be held in escrow with the $200.00 paid on June 30, 1965.

Counsel who searched title for Styers advised him under date of April 5, 1966, that in their opinion a defect existed in the title in that Dickey acquired the property at a tax sale and when he foreclosed the equity of redemption Colin Studds was not named as a party defendant. Studds was the record owner of the property by a deed back in 1892. Reference to our earlier *Styers* case will reveal that the Studds interest was sold at tax sale in 1917. Dickey was informed of what Styers' attorney had found, but apparently was unwilling to discuss the matter. Thereupon, on April 20 Styers wrote to Dickey suggesting two alternatives. The first was that there be no more payments on interest, principal or taxes until counsel for Dickey had cleared the defect in title, with Styers to then have 30 days in which to settle or resume payments. The second alternative was refund of the sums paid plus payment for the expense of the title search with interest at six per cent on all sums paid. Discussion took place after this between Styers and the attorney for Dickey. On May 13 Dickey's attorney advised Styers:

"* * * Mr. Dickey still feels that the title is correct, but he will obtain a Court Order if nec-

essary to settle the controversy as to whether it is a good title or not."

When no steps were taken by Dickey, Styers on August 3 wrote the attorney advising that since there had been no effort to clear the defect, Styers wanted his money back. He then proceeded to itemize what he thought was due him by way of refund. This produced a reply from the attorney that Dickey was "ready, willing and able to convey the property to [Styers] free and clear of all encumbrances", with the suggestion that the matter be set for settlement. On January 10, 1967, Dickey addressed the following letter to Styers:

"Dear Mr. and Mrs. Styers:

Since you have taken no action whatsoever in your claim that you were going to file suit pertaining to this property, and since Mr. Henry Babcock wrote you on August 8, 1966 stating that we could convey title to such property clear of any and all encumbrances and stating that title is good, and since you have paid no more money on the above-stated property, nor paid any interest since a payment you paid on April 1, 1966, over nine months ago, we are now declaring any interest you might claim to this property null and void, and the same will be offered again to others for sale, as you are apparently no longer interested in the property.

Yours truly,
/s/
J. Victor Dickey

JVD:gd

With a balance due of $4,450.88 and interest due from 4/1/66 at 6%, also with 1966 taxes due in the amount of $54.98.

Certified Mail"

The attorney who represented Dickey at that time was

called as a witness by Styers. The record at one point is as follows:

"Q. Subsequent to the letter of January 10, 1967, did you have a conversation with me regarding the status of this title? A. Yes; I did. I can remember the substance of the conversation. I can't—it was either out here in the hall or on the telephone, but I recall that you stated to me that you had to do something about that Styers' matter, and you stated that how about giving the money back. I think I told you, 'Well, let's go on and settle it.' And you stated, 'Well, I can't settle the case. The title is not good.' I said, 'It is good.' And then you told me, 'If it is good, well you file suit for specific performance.' I can't ask Mr. Dickey to spend his money clearing up a title which he already thinks is good. I said, 'Why don't you file a suit for specific performance.' And I think you told me, 'Well, I'd have to come in and say it was a good title when it is not.' And then I think you said, 'Well, I'd just have to sue at law for damages.' And I said, 'We'll do that. That probably won't clearly solve the problem. Why don't we go into equity and put the matter squarely to the court as to whether it is a good or bad title and, in effect, with the statute, and if the court says it is a good title we'll go on through with the deal. If it is not a good title, then as a matter of law Mr. Dickey, of course, will have to give the money back or I'll have to open up that old equity suit and clear it up.' And you said, 'Well, you'll have to go ahead and get up a suit,' something along that line. And I said, 'Well, just send me a copy of the complaint and I'll file it—an answer and together with a motion for summary judgment. We'll get the Court's opinion on it.' So, that was done."

The bill for a declaratory decree was filed and we ultimately held Dickey was "possessed of a good, marketable title to the property in question notwithstanding the failure to name Studds and his heirs as parties defendant in Dickey's earlier suit to foreclose the equity of redemption of Pere Wilmer." 252 Md. at 558. Dickey filed an answer in that proceeding and his attorney appeared in the circuit court and before us. Our opinion was filed on March 6, 1969. On March 28, after our opinion reached counsel but before our mandate reached the circuit court, Styers' attorney wrote to Dickey's attorney advising that Styers was ready to settle. He proposed a formula for settlement having to do with interest, reimbursement for taxes paid, and a suggestion relative to mortgage terms. Dickey's attorney replied that Dickey did not want a mortgage. Accordingly, Styers then proposed payment in cash. Dickey's attorney said:

> "I communicated that to Mr. Dickey. Then it was at that time that he told me that he didn't want to go through with the contract at all, and that is when I wrote you [Styers' attorney] this letter."

The final communication was a letter from Dickey's attorney on June 6 in which it was said that Styers was regarded as in default and, therefore, Dickey did not regard himself as being under any obligation to proceed.

Evidence at the trial in the circuit court was confined to the testimony of C. Kenneth Styers and the former counsel for Dickey, together with a number of letters. At the end of the plaintiffs' case, Dickey made a motion to dismiss under Maryland Rule 535, which motion was granted. The chancellor in ruling upon the motion said in part:

> "[W]e feel and conclude that in order for any agreement to be specifically performed it must have terms that the Court can look at that are rather concise and unambiguous and certain.

> We must conclude in this instance that there is very, very little testimony to indicate just that and that the Court would have to employ and read into the contract things that are not there, and we don't feel that is the function of the Court. That is the function of the parties who must draw a document, and the only function of the Court is to construe the document as they have written it. To go beyond that would be to go beyond the propriety, we feel, of the Court's function."

In deciding whether to dismiss an equity action at the close of the plaintiff's case, the chancellor under Rule 535 must view the evidence, that is, draw the legitimate inferences most favorably to the complainant. *Allen v. Steinberg,* 244 Md. 119, 123, 223 A. 2d 240 (1966). When what one believes is a defect in a title arises and the seller does not appear willing to remedy the defect, then the buyer must determine either to accept the title as it is and promptly tender settlement, or to cancel the contract. *Chapman v. Thomas,* 211 Md. 102, 108, 126 A. 2d 579 (1956), and cases there cited. Here, the chancellor commented that the agreement "seems to be completely devoid of any provision as to what title [Styers] should receive." The law is that the purchaser is not bound to accept anything short of an unencumbered legal estate in fee, the title to which is free from reasonable doubt. *Budacz v. Fradkin,* 146 Md. 400, 408, 126 A. 220 (1924), and cases there cited. In *Wm. H. McCeney, Inc. v. Thibadeau,* 215 Md. 77, 137 A. 2d 206 (1957), Judge (later Chief Judge) Henderson said for the Court:

> "It is well settled that if 'there is any reasonable chance that some third person might question the title after the consummation of the contract, the Court considers this a circumstance which renders the bargain a hard one for the purchaser, and will not compel him to execute it.' *Garner v. Union Trust Co.,* 185 Md. 386,

389. Cf. *Brown v. Shilling,* 9 Md. 74; *Gill v. Wells,* 59 Md. 492, 495; and *Berlin v. Caplan,* 211 Md. 333, 343. See also Note, 57 A.L.R. 1253." *Id.* at 79.

Although we held that Dickey had a good title, Styers clearly was justified in questioning the point since there had been no prior case arising under Code (1965 Repl. Vol.), Art. 81, § 99A as enacted by Chapter 182 of the Acts of 1964. In this instance, Styers elected initially to bring the suit for a declaratory judgment, rather than attempting to cancel the contract when Dickey was unwilling to take steps to clear what Styers regarded as a defect in the title. Conduct of parties to a contract may be evidence of the subsequent modification of their contract. *Pumphrey v. Pelton,* 250 Md. 662, 670, 245 A. 2d 301 (1968); *Solomon's Marina v. Rogers,* 221 Md. 194, 198, 156 A. 2d 432 (1959); *Evergreen Amusmt. Corp. v. Milstead,* 206 Md. 610, 616-17, 112 A. 2d 901 (1955); *Saul v. McIntyre,* 190 Md. 31, 36, 57 A. 2d 272 (1948); and 4 *Williston on Contracts* § 623 (3rd ed. Jaeger 1961). The conduct of Dickey relative to the declaratory judgment action could well be regarded as a modification of the contract by him. It will be noted that the option agreement here in question, which became a contract for sale upon acceptance of the option, provided after acceptance that "payments of not less than" $60.00 per month plus interest were to be paid. The very next sentence then provided that the buyers should have the right "to pay the balance in full at any time without penalty." Styers, the purchaser, has tendered the full purchase price. This fact and these provisions are sufficient to bring the case squarely within the situation existing in *Darneille v. Geraci,* 237 Md. 51, 205 A. 2d 55 (1964), where the contract of sale called for a purchase money mortgage with specified payments "or more". Judge Horney there said for the Court:

"Contending that a mortgage was required and that the words 'or more' allowed payment of the

mortgage in more than sixteen semi-annual payments over an indefinite period, the defendants claim that a mortgage which has an uncertain maturity date is unenforceable and that specific performance was properly denied. We do not agree that the words 'or more' had the effect ascribed to them by the defendants. Rather, it seems to us that they were intended to allow the purchaser to pay the mortgage debt in less than sixteen installments or, if he desired, to pay the whole debt (or the balance of it) on any installment date he might choose within an eight year period. There was therefore never any necessity for the execution of a mortgage in this case should the purchaser choose, as he did, to pay the balance of the purchase price in cash at the time of settlement." *Id.* at 55.

"[W]here credit is provided for, as was the case here, it is the privilege of the purchaser, in the absence of some indication to the contrary, to waive all uncertainties relating to the extension of credit by tendering the whole (or balance) of the purchase price. Ordinarily, tender not only waives all defects or uncertainties in the terms of credit, but also waives all other uncertain terms, when, as here, they were primarily for the benefit of the purchaser." (Citing authorities.) *Id.* at 57.

Examined in that light, the contract loses any indefiniteness. It was one to sell certain specified land for the sum of $4,800.00 and the purchaser has tendered the purchase price in full.

The general rule relative to specific performance has been quoted by this Court many times. See, for instance, *The Glendale Corp. v. Crawford,* 207 Md. 148, 114 A. 2d 33 (1955), where Chief Judge Brune said for the Court:

"The general rule with regard to specific performance of contracts for the sale of land has

been stated many times. Specific performance is not a matter of absolute right in the party but of sound discretion in the court. This discretion is not, however, arbitrary; and where the contract is, in its nature and circumstances, unobjectionable—or, as it is sometimes stated, fair, reasonable and certain in all its terms—it is as much a matter of course for a court of equity to decree specific performance of it as it is for a court of law to award damages for its breach." (Citing authorities.) *Id.* at 154.

Considering the evidence presented and drawing the legitimate inferences from it most favorable to the plaintiff as required by Maryland Rule 535, we conclude that the chancellor erred in dismissing the proceeding at the end of the complainants' case, since Styers made out a case for specific performance. Accordingly, Dickey should go forward with any defense he may have.

> *Decree reversed and case remanded for further proceedings consistent with this opinion; appellee to pay the costs.*