PREISSMAN *v.* HARMATZ, Personal Representative
of the Estate of Herbert J. Green

[No. 245, September Term, 1971.]

*Decided March 10, 1972.*

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, SINGLEY, SMITH and DIGGES, JJ.

*Isidore Gordon Preissman* in proper person.

*Eugene Hettleman* for appellee.

SINGLEY, J., delivered the opinion of the Court.

Mr. Preissman, who is a member of the bar, thinks he has many reasons why a decree entered against him, specifically enforcing the contract he made to purchase the leasehold property at 2323 McCulloh Street in Baltimore, should be reversed. Before considering those of his arguments which we consider germane, we shall relate the facts which gave rise to this somewhat bizarre situation.

In 1963, Herbert J. Green and Bessie Green acquired the McCulloh Street leasehold as tenants by the entirety. Bessie Green died in 1969; Herbert J. Green, on 24 March

1970, leaving his sister, Bessie E. Cottman as his only next of kin and heir at law. On the assumption that Green had died intestate, Harry K. Lott, also a member of the bar, was appointed personal representative of Green's estate by the Orphans' Court of Baltimore City on 12 May 1970.

Shortly thereafter, Leonard J. Harmatz, who too is a member of the bar, filed a petition in the orphans' court alleging that he had been named executor of a will which Green had executed on 31 July 1963, and asked that he be appointed personal representative in the place and stead of Mr. Lott. This was accomplished by order entered 30 June 1970, which also admitted Green's will to judicial probate under Maryland Code (1957, 1969 Repl. Vol.) Art. 93, § 5-401.

On 15 July, on petition of Mr. Harmatz filed under Art. 93, § 7-401,[1] the orphans' court authorized the sale of the McCulloh Street leasehold at public or private sale, and on 13 August, it was sold at public auction to Mr. Preissman for $4,625.00. Under the terms of the sale, a $500.00 deposit was required, which was made by Mr. Preissman, settlement was to be made within 30 days, and time was of the essence.

Mr. Preissman took possession of the property in late August, and rented it to a tenant for $132.00 per month. The day when settlement was to be made, 12 September, came and went, and on 30 September, Mr. Preissman went into the orphans' court with a petition, asking that the sale be set aside, assigning a number of grounds in support of his petition, questioning title to the leasehold, and alleging that insufficient notice had been given of the hearing for judicial probate and certain irregularities in the conduct of the hearing, but making no proffer to return the rents which he had collected.

Mr. Harmatz replied with commendable brevity, pointing out that the bifurcated attack was, in part, a chal-

---

1. Art. 93, § 7-401 was amended by Ch. 460 and Ch. 600 of the Laws of 1970. Ch. 600 also amended §§ 5-403 and 1-103, discussed *infra*. None of the amendments is significant in this case.

lenge directed at the marketability of title to the Mc-Culloh Street leasehold, which was beyond the jurisdiction of the orphans' court, *McComas v. Wiley*, 132 Md. 406, 410, 104 A. 52 (1918), and in part a collateral attack on the validity of Mr. Harmatz' appointment as personal representative, which could not be maintained, because, since Mr. Preissman was not a personal representative, a legatee or an heir, he was not an "interested person" as defined by Maryland Code (1957, 1969 Repl. Vol.) Art. 93, § 1-101 (f), and therefore could not reopen a judicial probate for alleged failure to give the notice called for by § 5-403. Art. 93, § 5-406 provides, "Except as provided in § 5-407 [which permits the reopening of a judicial probate on request by an interested person within 18 months of the death of the decedent], any determination made by the court in a proceeding for judicial probate shall be final and binding as to all persons."

Mr. Harmatz then countered with a bill of complaint, filed in the Circuit Court of Baltimore City, in which he summarized what had occurred; asked that the court assume limited jurisdiction over the administration of Green's estate in order that title to the McCulloh Street leasehold might be determined; that Mr. Preissman's deposit might be forfeited; that Mr. Preissman be required to account for the rents he had collected, and that Mr. Harmatz be authorized to resell the property for Mr. Preissman's account.

There followed a flurry of preliminary sparring: Mr. Preissman responded with a motion raising preliminary objections—first, because the petition to set aside sale was pending in the orphans' court; second, because of want of a necessary party, the auctioneer who conducted the sale, and finally, because the action brought in equity related to a controversy which was cognizable at common law.

At this juncture, Mr. Harmatz moved for the entry of a summary decree in his favor, supported by an affidavit which again recited the factual background.

The circuit court overruled the motion raising prelimi-

nary objections on the first two grounds, but granted it on the third, that the bill of complaint, as framed, raised a question which was properly cognizable at law.

Mr. Harmatz then filed an amended bill of complaint, seeking specific performance of the contract of sale. Mr. Preissman demurred, on the same grounds: the pendency of the orphans' court action to set aside the sale; the failure to join the auctioneer as a party, and the existence of an adequate remedy at law. This was reinforced by a motion to dismiss Mr. Harmatz' motion for summary judgment.

Ultimately, the matter was referred to a master, who filed a report and recommendation which concluded that a decree for specific performance should be entered. Mr. Preissman filed exceptions, bottomed on grounds which will be disposed of in the course of our opinion, supported by an affidavit in opposition to the motion for summary judgment, raising many additional questions. The exceptions came on for a full evidentiary hearing, and from a decree overruling the exceptions, granting the motion for summary judgment, ordering specific performance of the contract, or in the alternative, the sale by a trustee of the McCulloh Street leasehold for Mr. Preissman's account and at his risk, together with an accounting by Mr. Preissman of rents collected by him, Mr. Preissman has appealed.

Ignoring, for the moment, the tedious litany of procedural maneuvering which we have just recounted, it may well be that Mr. Preissman has lost, for reasons unknown to us, some of the enthusiasm he had for the McCulloh Street leasehold which he purchased at public auction on 13 August 1970.

Equally clear is the fact that he is seeking the best of two worlds: while challenging the marketability of title, on the one hand, he has, on the other, been busily engaged in collecting and pocketing the rents for a year and a half, while paying none of the property expenses.

It seems to us that he has two courses open. He can either abide by the decree and perform his contract, ac-

cording to its terms, by paying the unpaid balance of purchase price, with interest at 6% from date of sale, together with property expenses which have accrued during the interim, or fail to comply with the decree, in which case he will suffer the property to be sold at his account and risk, and must account for the rents. *See Swartz v. Realty Co.,* 106 Md. 290, 296, 67 A. 283 (1907). Regardless of the course he selects, he will be taxed for costs below and on appeal.

While Mr. Preissman mounts a multifaceted attack on the result reached below, the issues which he raises fall generally into three categories:

## (i)

### The alleged errors of the circuit court

As we understand the thrust of this argument, it is that the court below erred in denying that part of Mr. Preissman's motion raising preliminary objections which related to the pendency of the motion to set aside the sale in the orphans' court and in permitting Mr. Harmatz to file an amended bill of complaint in the circuit court.

No principle is more firmly established than that an orphans' court has no jurisdiction to determine title to real property, *McComas v. Wiley, supra,* 132 Md. at 410 or that when an orphans' court is unable to afford a complete and adequate remedy, equity will assume jurisdiction, *Shapiro v. Ryan,* 233 Md. 82, 87-88, 195 A. 2d 596 (1963). Under the facts of this case, the orphans' court was powerless to act, and the assumption of jurisdiction by the equity court was proper.

It has long been established that amendments should be freely allowed to serve the ends of justice, *Hall v. Barlow Corp.,* 255 Md. 28, 39-40, 255 A. 2d 873 (1969); *Stoewer v. Porcelain Enamel & Mfg. Co.,* 199 Md. 146, 150, 85 A. 2d 911 (1952), and that in the absence of abuse of discretion, the allowance or refusal of an amendment will not be reviewed, *Baer v. Baer,* 252 Md. 586, 589-90, 250 A. 2d 897 (1969); Rule 320.

Mr. Preissman complains that the circuit court erred

in granting Mr. Harmatz' motion for summary judgment under Rule 610 because both the motion and the affidavit were defective in form. The short answer to this contention is that even if they were, a court may enter summary judgment of its own motion where there is no genuine dispute as to a material fact, *Hunt v. Montgomery County*, 248 Md. 403, 237 A. 2d 35 (1968); *Fletcher v. Flournoy*, 198 Md. 53, 81 A. 2d 232 (1951) and that therefore the entry of a judgment on a motion which is defective in form is not necessarily reversible error, *Myers v. Montgomery Ward & Co.*, 253 Md. 282, 252 A. 2d 855 (1969).

## (ii)

The alleged irregularities in the orphans' court

Code (1957, 1969 Repl. Vol.) Art. 93, § 1-101, § 5-406 and § 5-407, when read together, make it abundantly clear that a determination made by an orphans' court in a proceeding for judicial probate may only be challenged by a personal representative, a legatee or an heir within 18 months of the death of the decedent. Mr. Preissman is none of these, and consequently has no standing. Moreover, we were told at argument that the legatees who were alleged to have been improperly served had actual notice. In any event, none of them challenged the proceeding during the 18 month period.

Mr. Preissman would add to his arsenal of weapons an attack on the constitutionality of the notice given under Art. 93, § 5-403, which incorporates the requirements of § 1-103, alleging that the acceptance of certified mail return receipts signed in two instances by persons having the same surname as, but a given name different from, that of the legatee addressed was clearly violative of Fourteenth Amendment rights of due process, relying on *Mullane v. Central Hanover Bank & Trust Co.*, 339 U. S. 306, 70 S. Ct. 652, 94 L. Ed. 865 (1950). This can be no more than an academic exercise, in part because the clear holding of *Mullane* was that while notice by publication was insufficient as regards beneficiaries whose names and

addresses were known to the trustee, notice by ordinary mail would suffice, but primarily because Mr. Preissman, who is neither one of the legatees nor acting in their behalf, does not have the standing of an interested person required by Art. 93, § 5-407.

In *Stanley v. Safe Deposit Co.*, 88 Md. 401, 41 A. 790 (1898), an attack was made on the adequacy of notice given prior to the admission of a will to probate. Our predecessors held that if it appeared to the orphans' court that such reasonable notice was given, it took jurisdiction of the probate and that once a question was finally determined by the orphans' court in the exercise of its jurisdiction, there could be no collateral attack on the regularity of the proceeding.

Even before the adoption of Art. 93 in its present form, it was the rule that when the orphans' court had jurisdiction its order could not be assailed in a collateral proceeding for error in procedure. Stated otherwise, this means that a sale is insulated from collateral attack unless wholly void, 34 C.J.S. *Executors and Administrators* § 618, at 597 (1942).

*Van Bibber v. Reese*, 71 Md. 608, 18 A. 892 (1889) was a case in which a contract purchaser of real estate bought from a devisee refused to perform his contract on the ground that the executrix had failed to comply with the provision requiring that notice be given to creditors. Our predecessors held that a bona fide purchaser is entitled to rely on orphans' court records which showed a final settlement of the personal estate and the payment of debts and expenses of administration. Under such circumstances, he takes the property free of equities of which he had no actual or constructive notice. The order decreeing specific performance by the purchaser was affirmed. To the same effect was the holding in *Simpson v. Bailey*, 80 Md. 421, 423, 30 A. 622 (1894).

An analogous example may be found in *Becker v. Minber Corp.*, 177 Md. 583, 10 A. 2d 707 (1940). There, Becker, who bought a leasehold from a purchaser at a foreclosure sale, refused to perform his contract because

the assignee of the mortgagee who had conducted the foreclosure proceeding filed the original mortgage which had been short-assigned to him but failed to file certified copies of recorded assignments of the mortgage. This Court held that since the equity court had jurisdiction in the matter, the failure to file the recorded assignment, although contrary to the letter of the rule of court, was a mere dispensable formality and that the purchaser at the foreclosure sale acquired a good and merchantable title and specific performance should have been decreed.

### (iii)
### The marketability of title

Mr. Preissman makes much of what he conceives to be possible defects in the title to the McCulloh Street leasehold. As we have pointed out, he lacks the standing under Art. 93 to rely on the alleged irregularities in the orphans' court proceeding. We have considered all of the other alleged title defects, including the assertion that the leasehold was subject to an unpaid judgment for $152.00, which certainly could be satisfied at settlement, as well as the allegation that Herbert Green and Bessie Green were not husband and wife at the time they acquired the property in 1963. It is clearly the law that had this been the case, they would have taken as joint tenants and that title would have vested in Green as surviving joint tenant, *Michael v. Lucas*, 152 Md. 512, 137 A. 287 (1927).

What Mr. Preissman overlooks is that an action for specific performance is a classic manner in which a determination can be made whether the supposed title defects are such as to produce a bona fide hesitation in a reasonable man not based on captious, frivolous or astute niceties, *Berlin v. Caplan*, 211 Md. 333, 343, 127 A. 2d 512 (1956), that is, whether the doubt is a reasonable one, *Styers v. Dickey*, 261 Md. 225, 231, 274 A. 2d 374 (1971). We perceive nothing here to justify his apprehensions.

In passing, we are constrained to point out that Mr. Preissman is not entitled to demand from an executor

or trustee a deed containing a covenant of special warranty because executors and trustees can convey no better title than they have, and are without power in their representative capacity to bind the estate, *Sumner v. Williams,* 8 Mass. 162 (1811) ; 3 *American Law of Property* § 13.6 b, at 509 (1952) and under some circumstances may not even be held on a warranty which purports to be personal, *Boyle v. Rider,* 136 Md. 286, 301, 110 A. 524 (1920) ; *Glenn v. Allison,* 58 Md. 527, 529 (1882) ; Rawle, *Covenants for Title* 418-19 (1852) ; 34 C.J.S. *Executors and Administrators* § 641, at 617, § 642, at 618, § 652, at 629 (1942), and *compare* Code (1957, 1966 Repl. Vol.) Art. 21, § 75. "Executor's deed" and Art. 21, § 73. "Trustee's deed under a decree" *with* Art. 21, § 88. "Effect of special warranty."

*Decree affirmed, costs to be paid by appellant.*