DART DRUG CORPORATION et al. *v.* HECHINGER COMPANY, INC.

[No. 298, September Term, 1973.]

*Decided June 3, 1974.*

16

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*Franklin Goldstein,* with whom were *Burke, Gerber & Wilen* and *Thomas J. Kenney* on the brief, for appellant Drug Fair, Inc. *David Macdonald,* with whom were *Macdonald & Manoogian* on the brief, for appellant Peoples Drug Stores, Inc. *James S. McAuliffe, Jr.,* with whom were *Heeney, McAuliffe & Rowan* on the brief, for appellant Dart Drug Corporation.

*Victor L. Crawford,* with whom were *Crawford & Goldberg* on the brief, and *Benny L. Kass,* with whom were *Boasberg, Hewes, Klores & Kass* on the brief, for appellee.

*Amicus Curiae* brief filed by S. S. Kresge Company (*Brian P. Phelan, Harry A. Inman, David B. Robinson, Patton, Boggs & Blow* and *James C. Tuttle* on the brief).

SINGLEY, J., delivered the opinion of the Court.

In a sense, this case is a product of the result reached in *Giant of Maryland, Inc. v. State's Attorney,* 267 Md. 501, 298 A. 2d 427, *appeal dismissed,* 412 U. S. 915 (1973), where we decided that the Sunday closing law applicable to Prince George's County, Maryland Code (1957, 1971 Repl. Vol.) Art. 27, § 534H (c) (3), which exempted "small business with not more than six persons on any one shift," did not exempt a business which regularly employed more than six employees on a shift on weekdays, but reduced the number of employees on each shift on Sundays to six or less. There was a further holding that Giant could not avail itself of the exemption accorded drugstores,[1] because although it operated a pharmacy within the store, its business was the general sale of food products.

---

1. Giant also argued, in the alternative, that it came within the exemptions provided for delicatessens or bakeries, *see* Maryland Code (1957, 1971 Repl. Vol.) Art. 27, § 534H (b) (2), (3), and was unsuccessful in this respect.

An almost identical statute, Code (1957, 1971 Repl. Vol.) Art. 27, § 534J, which relates to Sunday activities in Montgomery County, similarly exempts small businesses with not more than six persons on any one shift and "drugstores whose basic business is the sale of drugs and related items":

"(a) In Montgomery County, except as specifically in this section otherwise provided, it is unlawful on Sunday for any wholesale or retail establishment to conduct business for labor or profit in the usual manner and location or to operate its establishment in any manner for the general public. It shall not cause, direct, permit, or authorize any employee or agent to engage in or conduct business on its behalf on Sunday.

"(b) Notwithstanding any provision of this section, the operation of any of the following types of retail establishments is allowed on Sunday:

"1. Drugstores whose basic business is the sale of drugs and related items.

\* \* \*

"(c) Nothing in this section applies to:

\* \* \*

"2. Nurserymen

"3. Small business with not more than six (6) persons on any one shift with the exception of persons or retailers engaged in the sale of motor vehicles.

\* \* \*

"(i) The State's Attorney of Montgomery County may petition the Circuit Court to enjoin any violation of this section."

Hechinger Company, Inc. (Hechinger) operates two stores in Montgomery County, advertised as "The World's Most Unusual Lumber Yards." Hechinger's president described

his company as being "in the lumber, hardware and general merchandise business," or, alternatively, as being in the "home center business." It is conceded that Hechinger does not sell drugs.

Regarding itself aggrieved by what it viewed as an uneven enforcement of section 534J in Montgomery County, with the result that Dart Drug Corporation (Dart Drug), with four stores; Drug Fair, Inc. (Drug Fair) with 10 stores, and Peoples Drug Stores, Inc. (Peoples) with 27 stores, sometimes hereafter referred to collectively as "the Drugstores," which sold over 67% of the items, in a generic sense, sold by Hechinger, were permitted to remain open on Sunday, while Hechinger had been required by Montgomery County law enforcement officers to be closed on Sundays beginning in January, 1973, Hechinger brought an action for declaratory and injunctive relief on the equity side of the Circuit Court for Montgomery County against Dart Drug, Drug Fair, and Peoples.[2]

This appeal was entered from an order enjoining Dart Drug, Drug Fair, and Peoples from remaining open in Montgomery County on Sunday, with the exception of any store not regularly employing more than six persons on any one shift.[3]

The Drugstores mount a multi-faceted attack on the order entered below. They would have us reverse because:

(i) The lower court erred in holding that Code (1957, 1971 Repl. Vol.) Art. 27, § 534J (b) (1), is unconstitutional;

(ii) All of the Drugstores' stores were "drugstores whose basic business is the sale of drugs and related items";

(iii) Hechinger lacked standing to bring the suit;

---

**2.** Because Hechinger did not allege that section 534J was unconstitutional, it was not required to comply with Maryland Code (1957, 1971 Repl. Vol.) Art. 31A, § 11, which required that the Attorney General be notified if a statute is alleged to be unconstitutional, see Givner v. Cohen, 208 Md. 23, 116 A. 2d 357 (1955).

**3.** The injunctive order also indicated that it might be amended to permit Sunday sales of "medical and surgical supplies, cigars, tobacco, ice cream, candies, nuts, soft drinks, newspapers and magazines." It would seem that the Drugstores would find such a restricted operation physically impossible as well as economically unfeasible.

(iv) The lower court erred when it overruled the Drugstores' demurrers which raised the question that Hechinger failed to join indispensable parties.

(v) The lower court erred when it refused to allow the Drugstores to join what they regarded as indispensable parties;

(vi) The lower court denied the Drugstores procedural due process;

(vii) Hechinger sued Dart Drug, Inc., and not Dart Drug Corporation, the proper defendant.

While we propose to modify the declaration entered by the chancellor below (Shure, C. J.), and affirm his order, we shall consider each of these contentions.

(i)

The holding that Code (1957, 1971 Repl. Vol.) Art. 27, § 534J (b) (1) is unconstitutional.

This contention can be disposed of summarily, because the Drugstores are quite right. Provisions comparable to that contained in section 534J have consistently survived attack on constitutional grounds, *Giant of Maryland, Inc. v. State's Attorney, supra,* 267 Md. at 516-17, 298 A. 2d at 435-36; *Rebe v. State's Attorney,* 262 Md. 350, 354-58, 277 A. 2d 616, 618-20 (1971); *Richards Furniture Corp. v. Board of County Comm'rs,* 233 Md. 249, 263-64, 196 A. 2d 621, 628-29 (1963); *McGowan v. State,* 220 Md. 117, 122-26, 151 A. 2d 156, 159-61 (1959), *affirmed,* 366 U. S. 420 (1961).

(ii)

All of the Drugstores' stores were "drugstores whose basic business is the sale of drugs and related items."

Webster's New International Dictionary 226 (2d ed. 1944) defines basic as "of or pertaining to the base or essence; fundamental; as, a *basic* fact; constituting a basis; as, a *basic* wage." (Emphasis in original.)

At argument before us the Drugstores made the point that to sustain the result reached below, the statutory exception

to Sunday closing must be read "Drug stores whose basic business is the sale of drugs and [drug] related items." We do not think words need be added to discern the clear expression of legislative intent that a drugstore which compounded prescriptions and sold proprietary drugs was permitted to be open on Sunday. The related items, not all drug related, would be the medical supplies, health and beauty aids, tobacco, candy, ice cream, newspapers, and magazines one would ordinarily expect to find in a pharmacy.

In *Patuxent Dev. Co. v. Ades of Lexington, Inc.,* 257 Md. 398, 263 A. 2d 584 (1970), a developer had leased space to a department store, and covenanted that it would not lease any other property controlled by it within a five-mile radius to a variety store or a five and ten cent store. When the developer attempted to lease 15,000 square feet of space within the proscribed area to Drug Fair of Maryland, Inc.,[4] the department store sought and received injunctive relief. We affirmed, noting that one of the witnesses had described Drug Fair as "a variety store with a prescription department," 257 Md. at 407, 263 A. 2d at 589. In that case, it was uncontroverted

> "that the typical Drug Fair operation sells, among other items not commonly found in drugstores, garden implements, unpainted furniture, men's, women's and children's clothing, paints, appliances, luggage, handbags, jewelry, phonograph records, radios, rugs, lamps, toys, bedding, hardware, housewares and books," 257 Md. at 407, 263 A. 2d at 589.

In this case, the chancellor found as a fact that the Drugstores were continuing to advertise the following for sale on Sunday:

> "By *Peoples Drug Stores* — Lucite wall paint, drop cloths, masking tape, spray paint, 7-piece

---

4. Drug Fair of Maryland, Inc. is the wholly owned subsidiary of Drug Fair, Inc. through which Drug Fair, Inc. operates its drugstores.

paint roller and tray set, Sunbeam spray iron, Oster blender, vinyl flannel-back table cloths, Liqui-Pour, decorative swag lamps, Schick fresh-air machine, fiberglass drapes, scatter rugs, Church toilet seats, nylon umbrellas, walnut-finished credenzas, metal wall units, glass-door bookcase, four-band radio, miscellaneous occasional furniture pieces, artificial floral centerpieces, model car kits, miscellaneous novelties, plush stuffed animals, and Liquid-Plumr drain opener.

"By *Drug Fair* — jewelry boxes, men's neckties, men's handkerchiefs, gym bag, drinking glasses, stuffed toys and stuffed animals, radio headphones, pocket radio, Buckingham motor oil, auto polishing cloths, door mirrors, sandwich bags, Heinz dill pickles, STP gasoline treatment, automobile ice scrapers, snow brooms, paper towels, dog food, and suede cleaner.

"By *Dart Drug* — Del Monte fruit cocktail and Del Monte sweet corn, sardines, miscellaneous fruit drinks, 60-minute cassette tapes, Maxwell House. coffee, drinking glasses, leather tote bags, pantyhose, snifter set, baby's trainer chair, baby's highchair, caulking compound, spray paint, 6-foot aluminum step ladder, Lucite paints, Chemtone paints, turpentine, paint thinner, masking tape, paint remover, paint and trim kit, household cement, Stanley screwdriver and aluminum level, Solidox torch kit, soldering iron kit, Oxwall assorted hand tools, staple gun kit, oil filters, A-C spark plugs, deluxe steel tow cable, standard tire pressure gauge, automobile mirrors, Prestone spray de-icer, tune-up kits for most cars, fuel guards, gas line anti-freeze, Hoover vacuum cleaners, Hoover steam-spray and steam iron, Sunbeam Mixmaster, Schick hair dryer, electric mixer, toaster oven, percolator, mini-bikes, velocipedes, miscellaneous toys, extensive camping equipment including sleeping bags, propane stove

and duffle bags, vinyl rain suits, baseball, basketball and tennis equipment, aluminum cookware, shag rugs, indoor and outdoor rugs, and Toro lawnmowers."

Figures were produced for the two highest volume stores operated by each of the Drugstores in Montgomery County. They showed that gross sales of "prescriptions, medicine and drugs" accounted for between 11.9% and 26.2% of total volume; "medical equipment and supplies" ranged from 3.0% to 6.4%; and, "health and beauty aids" ranged from 16.6% to 27.7%.

Taking this as a base, the Drugstores attempt to add sales of other items which are commonly found in drugstores to project percentages ranging from 65.8% to 80.15% of what they regard as drugs and related items. This is illusory, because it rests on the assumption that the Drugstores' basic business is the sale of drugs, which it clearly is not.

Faced with a similar argument in *Giant of Maryland, Inc. v. State's Attorney, supra,* 267 Md. at 517-18, 298 A. 2d at 436-37, Chief Judge Murphy, speaking for the Court, said:

"Lastly, we concur with the lower court's decision that none of Giant's stores in the County falls within the exemption provisions of § 534H (b) 1 (drugstores), 2 (delicatessens), or 3 (bakeries and bakeshops). Giant operates its stores as entities. On the two Sundays in question, the eleven Giant stores alleged to be in violation of § 534H did not limit their business to these three sections, but were doing business in all sections of the store. There is no evidence in the record that any of the Giant stores, viewed in light of their total operation, are 'drugstores whose *principal* [5] *business* is the sale of drugs and related items'; or '[d]elicatessens whose *principal business* is the sale of delicatessens and related food items';

---

5. The Prince George's County statute uses the word "principal" rather than "basic."

or '[b]akeries and bakeshops' within the common understanding of these terms. The evidence is to the contrary. More than 75% of Giant's sales are derived from general sales of food products. There is no significant distinction within the corporate structure of the operations of Giant as to the exempted-type of business and the non-exempted. We think Giant's drug, delicatessen, and bakery sales are part and parcel of its total operations. All of its employees are under one personnel system. It would do manifest violence to the language and intent of § 534H (b) to conclude that any of Giant's business operations fall within any of its provisions." (Emphasis in original.)

(iii)

Hechinger lacked standing to bring the suit.

This contention rests on three arguments: first, that Hechinger cannot maintain this action simply because the Drugstores are its competitors, since the Sunday closing law in no way relates to competition but is intended to promote repose and tranquillity; second, that Hechinger has an adequate remedy at law; and finally, because the Sunday closing law permits the State's Attorney to seek an injunction to prevent violations, a declaratory action will not lie when other relief is provided for.

The answer to these arguments is that while it is generally true that a private person cannot enforce a criminal statute without a showing that it was passed for his benefit, *Cook v. Normac Corp.*, 176 Md. 394, 398, 4 A. 2d 747, 749 (1939), it is equally true that the mere fact that a course of action is a crime will not prevent equity from dealing with it, if it causes the complainant harm for which there is no legal remedy, *Dvorine v. Castelberg Jewelry Corp.*, 170 Md. 661, 668, 185 A. 2d 562, 565 (1936). In fact, there are cases where the imposition of a criminal sanction may be less effective and complete than injunctive relief, and equity will act, *State v. Ficker*, 266 Md. 500, 508, 295 A. 2d 231, 235-36 (1972). *See generally Clark v. Todd*, 192 Md. 487, 492, 64 A. 2d 547, 549 (1949).

The Uniform Declaratory Judgments Act, Code (1957, 1971 Repl. Vol.) Art. 31A, § 6, provided [6] that where a statute contains a special form of remedy for a specific type of case, the statutory remedy must be followed. However, despite a provision permitting the State's Attorney to seek an injunction in order to compel compliance, a person threatened with prosecution for what he believes to be proper conduct — and this was Hechinger's situation — may seek declaratory relief, *Grimm v. County Comm'rs*, 252 Md. 626, 632-33, 250 A. 2d 866, 869 (1969). Moreover, it has long been held that a person whose rights are affected by a statute may obtain a declaration of his rights and status, *Pressman v. D'Alesandro*, 211 Md. 50, 54, 125 A. 2d 35, 37 (1956).

(iv)

The lower court erred when it overruled the Drugstores' demurrers which raised the question that Hechinger failed to join indispensable parties.

(v)

The lower court erred when it refused to allow the Drugstores to join what they regarded as indispensable parties.

These arguments can be appropriately considered together. Section 11 of the Uniform Declaratory Judgments Act provided in part:

"When declaratory relief is sought all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding. . . ."

Relying on cases which hold that a failure to join parties who may be affected by the declaration is fatal to the maintenance of an action for declaratory relief, *Williams v.*

---

**6.** Since 1 January 1974 the Uniform Declaratory Judgments Act has appeared in Code (1974) §§ 3-401 through 3-415 of the Courts and Judicial Proceedings Article. *See* Laws of 1973, Extraordinary Session, ch. 2, § 21 (a).

*Moore,* 215 Md. 181, 137 A. 2d 193 (1957), and *Givner v. Cohen,* 208 Md. 23, 116 A. 2d 357 (1955), the Drugstores sought, first by a demurrer, which was overruled, and later by motion, which was denied, to persuade the lower court either to require or permit the joinder of some 40 other drugstores and pharmacies in Montgomery County which were alleged to be open on Sunday and to sell the same sort of merchandise sold by the Drugstores.

We see no error here. What the Drugstores proposed was the joinder of all of the drugstores and pharmacies listed in the classified section of the telephone book. Procedurally, the question was raised by Peoples' demurrer, which was overruled, and again in an oblique and obscure reference to the bringing in of third party defendants in a motion for a continuance filed more than two years after the case had been instituted and just before it came on for trial. This motion, which primarily relied on other reasons, was denied.

The record does not show that there was before the court, by proffer or otherwise, at the time of either ruling, much more than the names and addresses of the other drugstores, taken from the classified telephone directory. There was no identification of those which were open on Sunday, and no suggestion that there was evidence as regards the number of employees each had, or what sort of merchandise each sold. Since the thrust of Hechinger's complaint was its situation vis-à-vis the Drugstores, we regard as significant the chancellor's comment during the trial of the case. When an effort was made, through oral testimony, to identify the other stores which were open on Sunday and describe the merchandise there, the chancellor rejected the proffer and limited the scope of the testimony for the reason that while these stores might be proper parties, they were not indispensable ones. *See* E. Miller, Equity Procedure § 24, at 32 (1897). On the state of the record then before the court, and considering the fact that the case had gone to trial, the chancellor may well have regarded this simply as a delaying tactic.

A similar procedural issue was raised in *City of Omaha v. Lewis & Smith Drug Co.,* 156 Neb. 650, 656, 57 N.W.2d 269,

272 (1953), where the plaintiff city sought a declaratory judgment as to whether the defendant, a retail store which sold drugs and groceries, was in violation of an ordinance prohibiting stores selling groceries from opening on Sunday. The defendant contended that if a declaration issued finding its operations violative of the ordinance, such a declaration would affect other stores, and there would be a lack of necessary parties since no other stores were parties to the proceeding. The Supreme Court of Nebraska rejected this notion:

> "Here the controversy is between the city and the defendant. Of course other store operators are interested but not in the issue as to whether or not the defendant has violated the ordinance, any more than they would be interested in the same issue if presented in a prosecution for a violation."

*See also Barry Laboratories, Inc. v. State Bd. of Pharmacy,* 26 Wis. 2d 505, 512-13, 132 N.W.2d 833, 836-37 (1965).

There was no abuse of discretion, and the issue is not one for appellate review, *Preissman v. Harmatz,* 264 Md. 715, 720, 288 A. 2d 180, 184 (1972).

(vi)

The lower court denied the Drugstores procedural due process.

The principal thrust of this argument is again the denial of Dart Drug's and Peoples' motion for a continuance. The chronology of the case was this. The suit was filed in October of 1971. Answers were filed in December. A flurry of interrogatories and depositions followed. An amended bill of complaint was filed in June of 1973. Objections were filed, and after a hearing, these were overruled in September, and the Drugstores were ordered to answer the amended bill, which was complied with in October. On 3 December, the case was set for trial on 19 December in order that it could be completed before the 1974 session of the General Assembly

commenced, because two of the counsel were members of the Senate.[7]

Maryland Rule 527 a 1 provides that the granting of a continuance is in the discretion of the court, and will not be reviewed on appeal unless the court acts arbitrarily and prejudicially, *Hogan v. Eastridge,* 260 Md. 136, 138, 271 A. 2d 683 (1970); *Butkus v. McClendon,* 259 Md. 170, 173, 269 A. 2d 427, 428 (1970). It would be hard to find an abuse of discretion when an eleventh hour request for a continuance is denied in a case which has been pending for 26 months.

### (vii)

Hechinger sued Dart Drug, Inc. and not Dart Drug Corporation, the proper defendant.

This contention is based on the fact that suit was brought against Dart Drug, Inc.; that the correct corporate name of the defendant is Dart Drug Corporation; that Dart Drug's four stores in Maryland are owned by four subsidiary corporations, none of which had been served, and none of which is incorporated as Dart Drug, Inc.

Even assuming that there was a misnomer and a lack of service on the four subsidiary companies, Dart Drug Corporation seems to have been served, answered the bill of complaint, and actively participated in the trial of the case below and in this appeal. Early in the trial of the case Hechinger's counsel moved to amend his complaint by interlineation. The court heard argument and granted the motion.

This was clearly consonant with the Maryland Rules. Rule 320 a 4 provides:

"4. Defects Disregarded.

"The court at every state of the proceedings shall

---

7. *See* Code (1974) § 6-402 (a), (e) of the Courts and Judicial Proceedings Article [formerly Code (1957, 1969 Repl. Vol., 1973 Cum. Supp.) Art. 75, § 24], which provides:

"If a member . . . of the General Assembly is an attorney of record in a proceeding [in, *inter alia,* a state court], the proceeding shall be continued from five days before the legislative session convenes until ten days after it is adjourned."

*See also* Maryland Rule 527 b.

disregard any error or defect in process, pleadings or record which does not affect the substantial rights of the parties."

Rule 320 b continues:

"b. *As to Parties.*

"1. Misnomer — Misjoinder — Nonjoinder — Omission of Heir or Devisee.

"A writ or action shall not abate by reason of the misnomer of a party or the nonjoinder or misjoinder of a party or by the omission of an heir or devisee. In every such case the court shall allow such amendments as justice may require in order to effect a fair trial."

Amendments should be freely allowed to serve the ends of justice, and in the absence of an abuse of discretion neither the allowance nor the refusal of an amendment will be reviewed, *Preissman v. Harmatz, supra,* 264 Md. at 720, 288 A. 2d at 184.

While we see no reason to disturb the result reached below, for the reasons already stated, we disagree with the chancellor's determination that Code (1957, 1971 Repl. Vol.) Art. 27, § 534J (b) (1), is unconstitutional. For this reason, as well as for the reason that all parties and the court treated the action as one for declaratory relief, some modification of the memorandum and injunctive order entered below will be required.

While a declaratory decree need not be in any particular form, it must pass upon and adjudicate the issues raised in the proceeding, to the end that the rights of the parties are clearly delineated and the controversy terminated, *Bruce v. Director,* 261 Md. 585, 588 n. 1, 276 A. 2d 200, 202 n. 1 (1971); *Reddick v. State,* 213 Md. 18, 31, 130 A. 2d 762, 768, *cert. denied,* 355 U. S. 832 (1957).

Hechinger sought the following relief:

"1. That this Court make a determination as to whether the Defendants, Dart Drug, Inc., Drug

Fair, Inc., and Peoples Drug Store, Inc., qualify as 'drug stores whose basic business is the sale of drugs and related items' within the meaning of Article 27, § 534J (b) (1) . . . .

"2. That this Court make determination as to whether the Plaintiff, Hechinger Company, Inc., is entitled to sell nursery products and nursery-related items on Sunday, and, therefore, [is] not subject to prosecution for same as an act prohibited by Article 27, § 534J under the exception provided in Subsection (c) (2) of that Section.

"3. That this Court enjoin and restrain the State's Attorney, Andrew L. Sonner, Defendant named herein, from prosecuting the Plaintiff, Hechinger Company, Inc., its agents, servants, or employees, under Article 27, § 534J.

"4. That this Court require and compel, through Writ of Mandamus, the State's Attorney for Montgomery County, Andrew L. Sonner, Defendant named herein, to prosecute Defendants, Dart Drug, Inc., Drug Fair, Inc., and Peoples Drug Store, Inc., for conducting substantially the same business on Sundays as Plaintiff, with regard to Section 534J of Article 27 . . . and, therefore, in all fairness, subject to prosecution if this Court finds that Plaintiff is subject to prosecution under said statute.

"5. That this Court pass an order granting Plaintiff the right to open his stores in Montgomery County, Maryland, for the business of selling and offering for sale to the public drug related items on Sundays.

"6. That this Court issue an order declaring Dart Drug, Inc., Drug Fair, Inc., and Peoples Drug Store[s], Inc., Defendants named herein, as being in violation of Article 27, § 534J, and further, enjoining and restraining said Defendants from conducting business on Sundays in competition with the Plaintiff named herein.

"7. That this Court enter orders for such other and further relief as it deems appropriate judging from the facts and circumstances of the case."

The issue with respect to the constitutionality vel non of Code (1957, 1971 Repl. Vol.) Art. 27, § 534J (b)(1), was raised for the first time in Dart Drug's answer, which asserted that there would be a denial of equal protection if Dart Drug were required to close while other drugstores remained open.

The lower court's declaration and decree will therefore be modified to read as follows, and as thus modified, will be affirmed:

It is this 3rd day of March 1974 by the Circuit Court for Montgomery County ordered:

That this court, sitting as a court of equity, hereby declares:

1. That the defendants, Dart Drug Corporation, Drug Fair, Inc., and Peoples Drug Stores, Inc. are not "drugstores whose basic business is the sale of drugs and related items" within the meaning of Maryland Code (1957, 1971 Repl. Vol.) Art. 27, § 534J (b)(1).

2. That as a consequence, said defendants may not open any store on Sundays in Montgomery County, unless they regularly employ on weekdays no more than six persons on any one shift in each place of business.

3. That the plaintiff, Hechinger Company, Inc., has failed to offer proof that it is a nursery as that term is used in Code (1957, 1971 Repl. Vol.) Art. 27, § 534J (c)(2), and in the absence of such proof no declaration of its rights can be entered.

4. That Code (1957, 1971 Repl. Vol.) Art. 27, § 534J (b)(1) is neither vague, indefinite nor overly broad, and therefore not facially unconstitutional.

5. That the demurrer of Andrew L. Sonner, State's Attorney for Montgomery County having

been granted, with the consequence that he is no longer a party to this action, the plaintiff's prayer for the issuance of an injunction and a writ of mandamus must be denied.

It is, therefore, ORDERED, adjudged and decreed that the branch stores of the three corporate defendants, Dart Drug Corporation, Drug Fair, Inc., and Peoples Drug Stores, Inc., operating in Montgomery County, Maryland, are enjoined and restrained from conducting business on Sunday, on and after 3 March 1974, saving and excepting, however, any branch store not regularly employing on weekdays more than six persons on any one shift.

FURTHER ORDERED that costs are to be paid by defendants.

> *Decree modified as set forth in the foregoing opinion, and as modified, affirmed.*
> *Mandate to issue forthwith.*
> *Stay heretofore granted vacated upon issuance of mandate.*
> *Costs to be paid by appellants.*