THE PENNSYLVANIA RAILROAD COMPANY, in Maryland *vs.* CASPAR REICHERT.

*Proceedings to Condemn land—Terms and Conditions of Inquisition—Demurrer—Sufficiency of Narr.—Contract—Demurrer overruled—When Promissor not excused by his Inability to perform his Contract—When objection to Prayer cannot be urged in the Court of Appeals—Liquidated damages—Agreement in the Alternative—Election—Payment compelled.*

In 1879, R. was the owner of a lot of ground in the City of Cumberland, occupied by him as a coal dealer, upon which there was erected a trestle connected by a switch with the C. & P. Railroad, by which he received supplies of coal for his customers. The P. Railroad requiring to have a right of way across the lot for its railroad, instituted proceedings of condemnation, under which a part of the lot was condemned for the use of the P. Railroad. In constructing the road of the P. Railroad Co., it was necessary to remove the trestle of R. The inquisition returned by the jury

awarded to R. $600 as damages. The inquisition also required that the P. Railroad should forthwith construct for R., his heirs and assigns in perpetuity, a trestle as therein described ; and should not charge more than one cent per ton for hauling coal from the point of connection between the two railroads to the switch or coal trestle, or more than it charged other coal dealers in that vicinity ; and for non-compliance with, or breach of, the conditions imposed, $1,500 was awarded to R. as damages. Nine feet of the width of the trestle which the P. Railroad was required to construct for R., was located upon the land condemned for the use of the P. Railroad, and seven feet upon the land of R. not so condemned. The inquisition was ratified by the consent and agreement of the parties. The sum of $600 awarded by the jury was paid, but the P. Railroad having failed, as alleged, to perform the other conditions prescribed in the inquisition, R. instituted suit. The declaration set out at length the proceedings for condemnation, of which " plat A." formed a part, and in alleging the breach by failing to construct the trestle required, described it " as along the line laid down on the plat returned with the said inquisition marked 'A,' of the width of sixteen feet as designated on said plat." The plat referred to, showed with certainty the lines of the land condemned, and with equal certainty designated the location of the required trestle, showing that it was to be constructed partly upon the land condemned for the use of the P. Railroad, and partly upon the land of R. The declaration also averred that " the plaintiff had hitherto well and truly performed, fulfilled and kept all things on his part and behalf to be performed, fulfilled and kept, according to the tenor and effect, true intent and meaning of said inquisition." On demurrer to the *narr.* it was HELD :

1st. That the *narr.* contained the requisite precision and certainty as to the land condemned, and as to the location of the trestle required to be constructed. It was not necessary to give any other or more particular description than was furnished by the plat referred to.

2nd. That the general averment in the *narr.* of performance by the plaintiff was sufficient ; it was not necessary to aver specifically that he offered himself ready and willing to permit the defendant to enter upon his land for the purpose of performing the work.

3rd. That where the terms and conditions imposed upon the condemning company are prescribed in the inquisition, enter into the estimate of damages, and are assented to by the parties, they are binding and constitute a contract between them.

Pennsylvania R. R. Co. *vs.* Reichert.

4th. That the matters alleged in the declaration constituted a legal cause of action, and the demurrer should not be sustained.

If the thing promised be possible in itself, it is no excuse that the promissor became unable to perform it by causes beyond his control, for it was his own fault to run the risk of undertaking unconditionally to fulfil a promise, when he might have guarded himself by the terms of his contract.

Where exception to a prayer on the ground that it submitted a question of law to the jury, is not specially taken in the Court below, such objection cannot be urged in the Court of Appeals.

Where by the terms of an inquisition to condemn land, the party seeking the condemnation is required to pay a fixed sum to the owner of the land, in case the former shall fail to perform the conditions specified in said inquisition, such sum is liquidated damages, and not a penalty.

When the agreement is in the alternative, to do some particular thing, or pay a given sum of money, the Court will hold the party failing, to have had his election, and compel him to pay the money.

APPEAL from the Circuit Court for Allegany County.

The case is stated in the opinion of the Court.

*First Exception.*—The plaintiff offered to prove, in order to show what damages had resulted to him from the failure of the defendant to carry out its contract, the amount of annual profits as regulated by market prices in Cumberland, which he would have realized as a retail dealer in coal, if the trestle had been erected and the connections given him by the defendant; to this offer the defendant objected, but the Court (PEARRE and MOTTER, J.,) overruled the objection and allowed the testimony go to the jury. The defendant excepted.

*Second Exception.*—The defendant proved that it is impossible to connect a trestle upon the line laid down on Plat A, upon which the defendant was to erect a trestle for the plaintiff with defendant's road, without laying a

connection switch and track outside of the land, as condemned, on plaintiff's lot—the witness testifying on cross-examination, that he was the general superintendent of the defendant, and that if it would commence a side track upon the land adjoining that of the plaintiff, which said land belonged to the defendant, at a certain distance from said trestle so agreed to be erected, then it could have connected its main lines with the trestle mentioned in the inquisition, and then offered to prove, that when the defendant moved the plaintiff's original trestle from the land condemned to make way for the construction of its road, it did immediately rebuild the same upon a line fifty feet from the line where the trestle for the plaintiff in the inquisition mentioned, was to be built as shown by plat "B," and that coal could be delivered there for the plaintiff from the Cumberland and Pennsylvania Railroad, as economically and conveniently as it could have been before the defendant moved the plaintiff's trestle, but the plaintiff objected to said last evidence thus offered, and the Court sustained the objection; the defendant excepted.

*Third Exception.*—The defendant offered to prove that the main track of its railroad constructed over the condemned land of the plaintiff, was constructed upon trestles, and that by cutting out some cross-ties from said track, coal could have been dumped from cars upon said track to the ground condemned, and that the plaintiff could, if he had so chosen, have used the said condemned ground under said track as a coal yard, as economically and conveniently as he could have used the one mentioned and contracted for in the inquisition, to be erected on his own land, and on the land condemned, and that the defendant offered the plaintiff to give him possession so to use the condemned land; to which evidence the plaintiff objected, and the Court sustained the objection, and refused to permit such evidence to be given to the jury, unless accompanied by proof that the plaintiff had consented to the

Pennsylvania R. R. Co. *vs.* Reichert.

substitution of said place for the one mentioned in the inquisition, of which the defendant neither gave nor proffered any evidence; to this ruling of the Court, the defendant excepted.

*Fourth Exception.*—The plaintiff offered four prayers, the third of which was rejected, the others are as follows:

1. That if the jury shall believe from the evidence that the inquisition offered in evidence was found by the jury of condemnation on the 5th day of July, 1879, and was returned to this Court, and ratified and confirmed on the 13th day of October, 1879, by the agreement and consent of the plaintiff and defendant, and that the defendant, on or about the 28th day of November, 1879, took possession of the land condemned, and tore down and removed the coal wharf of plaintiff, and has ever since used and occupied said land for its own purposes and objects, then such ratification and confirmation of said inquisition created and established a contract between the plaintiff and defendant, by which the defendant contracted to erect for the plaintiff such a trestling as in such inquisition described, and upon the line designated upon the plat filed with said inquisition, and to make for the plaintiff a connection with the defendant's road, and a connection with the Cumberland and Pennsylvania Road, and the plaintiff is entitled to recover such damages as they may believe the plaintiff sustained by the non-performance on the part of the defendant of its said contract; provided they further find, that the defendant failed to carry out said contract, and failed to erect said trestling in the manner described in said inquisition, or failed to make the plaintiff a connection with its own road, or a connection with the road of the Cumberland and Pennsylvania Company, within a reasonable time after the ratification of the inquisition; and provided the jury shall further find, that it was the intent and meaning of said contract, that the defendant and not the plaintiff was to procure the consent of the

Cumberland and Pennsylvania Railroad, or provide the right of the defendant to make such connection with the Cumberland and Pennsylvania Railroad, or if the jury shall find that the plaintiff was to procure such consent or right to connect, and did not fail to do so.

2. That if the jury shall believe from the evidence in the cause, that the trestle and main track of the defendant was erected and built through the land condemned, about the middle of February, 1880, and that it would not have taken the defendant more than three days to erect said trestle for the plaintiff, and that defendant's road was completed on or before 1st April, 1880, and that this suit was brought on the 9th day of April, 1880, then they may find that the defendant had reasonable time in which to erect said trestle for the plaintiff.

4. That if the jury believe from the evidence in the cause, that the defendant could have erected said trestle so to be built for the plaintiff, and could have continued the switch connection with the Cumberland and Pennsylvania Railroad, which belonged to the plaintiff, over to the place or location designated, as that of the trestling, to be built for the plaintiff, and could have connected said trestle with its own road, and did finish its own road before this suit was brought, notwithstanding the injunction offered in evidence by the defendant, then said injunction is no good or valid reason or excuse for not having erected plaintiff's trestling, and for not having made the said connections.

The defendant offered four prayers, the third and fourth of which the Court granted, the others are as follows:

1. That if the jury find from the evidence, that the defendant, at the time of the ratification of the inquisition mentioned in the declaration, the defendant was engaged in the construction of its road from the State line to its terminus, some distance below the property of the plaintiff, and to a connection with the Cumberland

and Pennsylvania Railroad, and that the defendant's road had not then any connection with any railroad connected with the coal region, but that the George's Creek and Cumberland Railroad was then engaged in building a railroad from the coal mines to a connection with the defendant's road, at the west end of the Narrows, by which coal might be brought over the defendant's road, and delivered to the plaintiff's coal yard, and that said George's Creek and Cumberland Railroad has not been completed or made ready for the transportation of coal or other traffic, and that the defendant forthwith, from and after the ratification of said inquisition, proceeded with all diligence and reasonable efforts to complete the construction of its road, and to make a connection thereof with the Cumberland and Pennsylvania Railroad, at or near the plaintiff's property, so that coal could be economically and conveniently brought from said road to the plaintiff's coal yard by such connection; and if they further find, that the Cumberland and Pennsylvania Railroad Company filed a bill to enjoin the defendant from crossing the Potomac Wharf Branch of its road, and that without crossing the same, the defendant's road could not reach the plaintiff's property, and that the Court granted said injunction, and, on motion, refused to dissolve it, and that the defendant carried the case to the Court of Appeals with all reasonable dispatch, and diligently prosecuted it there, and that there was involved in said case the question, whether the defendant's road had any power under its charter, and the laws relating to it, to construct its line of road on the east side of Wills' Creek to the plaintiff's property, and to a connection with the Cumberland and Pennsylvania Railroad, at or near thereto, and that both the plaintiff's property and said road are on the east side of said creek, and that the defendant, from the time said inquisition was ratified to the present time, has made earnest and constant efforts to secure said connection from

said company, and that said company has constantly refused the same, and resisted said efforts, and that defendant, with a view of effecting said connection by compulsory proceedings, summoned a jury of inquisition to condemn certain property which the Cumberland and Pennsylvania Railroad Company acquired between the defendant's line and such connection, and had the same returned to Court for confirmation, at January Term, 1880, and that a majority of the Court decided that defendant's road had no power to condemn land on the east side of Wills' Creek, and refused to confirm said inquisition, but suspended the entry of judgment therein to await the decision of the question, which was then pending before the Court of Appeals, in the injunction case aforesaid, and that the Court of Appeals did not render its decision until just before Christmas, 1880, and then decided that defendant's road might lawfully locate its road on the east side of the creek, and that since said decision has been rendered, the defendant has been making every reasonable effort to obtain said connection, that then the jury may find that a reasonable time had not elapsed for the defendant to make the connection of its road with the Cumberland and Pennsylvania Railroad, before the bringing of this suit, and if they do so find, the plaintiff cannot recover any damages for not connecting with said road.

2. That if the jury find the facts set forth in the defendant's first prayer, then the jury may find that a reasonable time had not elapsed between the time the inquisition mentioned in the declaration was ratified, and the bringing of this suit, for the construction of a trestle with four bins and dumps, by the defendant, for the plaintiff, and connecting the same with the Cumberland and Pennsylvania Railroad and defendant's road; and if they find a reasonable time had not elapsed for the performance of said work by the defendant before suit was brought, then their verdict must be for defendant.

Pennsylvania R. R. Co. *vs.* Reichert.

The Court granted the plaintiff's first, second and fourth prayers, and rejected his third prayer, and granted the defendant's third and fourth prayers, and rejected its first and second prayers. To the granting of the plaintiff's first, second and fourth prayers, and to the rejection of the first and second prayers of the defendant, the defendant excepted. The verdict and judgment being for the plaintiff, the defendant appealed.

The cause was argued before BARTOL, C. J., GRASON, ALVEY and MAGRUDER, J.

*Ferdinand Williams,* and *William Walsh,* for the appellant.

*A. Beall McKaig,* for the appellee.

BARTOL, C. J., delivered the opinion of the Court.

In 1879, the appellee was the owner of a lot of ground in the City of Cumberland, occupied by him as a coal dealer, upon which there was erected a trestle connected by a switch with the Cumberland and Pennsylvania Railroad, by which he received supplies of coal for his customers. The appellant requiring to have a right of way across the lot for its railroad, caused proceedings for condemnation to be instituted, under which a part of the lot was condemned for the use of the appellant. In constructing the road of the appellant, it was necessary to remove the trestle of the appellee. The inquisition returned by the jury awarded to the appellee the sum of *six hundred dollars* as damages.

The inquisition also contained the following provisions: "And we further find, as a part of this inquisition, and require of the Pennsylvania Railroad Company, that it shall forthwith construct for Caspar Reichert, his heirs and assigns in perpetuity, a trestle with four dumps, or

bins along the line laid down on the plat herewith returned marked "A," of the width of sixteen feet as designated on the plat, and said trestle shall be connected both with the Pennsylvania Railroad and the Cumberland and Pennsylvania Railroad, in such manner that coal can be economically and conveniently brought from both roads."

"And said Pennsylvania Company shall not charge more than one cent per ton for hauling coal from the point of connection between the two railroads to the switch or coal trestle, nor more than it charges other coal dealers in that vicinity, and in case of non-compliance with, or breach of, these conditions, we award *fifteen hundred dollars damages* to said Caspar Reichert for such breach or non-compliance therewith."

It appears by the plat that the trestle which the appellant was required to construct for the appellee, was located in part upon the land condemned for the appellant's use, and in part upon the land of the appellee not so condemned, that is to say, nine feet of its width upon the former and seven feet upon the latter.

When the inquisition was returned to the Circuit Court, it was ratified and confirmed by the consent and agreement of the parties. The sum of $600 in money awarded by the jury was paid, but the appellant having failed, as alleged, to perform the other conditions prescribed in the inquisition, the present suit was instituted by the appellee, and resulted in a verdict and judgment in his favor for $1200.

The appeal presents for review the rulings of the Circuit Court upon the pleadings, upon the prayers offered by the parties respectively, and also upon certain questions of evidence raised by the *first, second and third bills of exceptions.*

The sufficiency of the declaration is first to be considered.

In support of the demurrer thereto, it has been contended, *First*, that it is uncertain and insufficient, because it does not define the land on which the trestle was to be built, nor state who was the owner of it, nor what land or lines were on "plat A," referred to in the inquisition.

*Second.* That the trestle being required to be constructed in part on the land of the appellee, not within the lines of condemnation, it was necessary for the appellee to aver that he offered himself ready and willing to permit the appellant to enter upon his land and perform the work required.

*Third.* That it was not competent for the jury, or within its power and jurisdiction, to require the appellant to construct the trestle, as indicated on the plat, or to perform the other conditions prescribed.

We are of opinion that none of these objections were tenable. The declaration sets out at length the proceedings for condemnation, of which "plat A" forms a part, and in alleging the breach by failing to construct the trestle required, describes it "as along the line laid down on the plat returned with the said inquisition marked 'A' of the width of sixteen feet as designated on said plat."

The plat referred to shows with certainty the lines of the land condemned, and with equal certainty designates the location of the required trestle, showing that it was to be constructed partly upon the land condemned for the use of the appellant, and partly upon the land of the appellee. In this respect the declaration contained the requisite precision and certainty; it was not necessary to give any other or more particular description than was furnished by the plat referred to.

*Second.* It is averred in the *narr.* that "the plaintiff hath hitherto well and truly performed, fulfilled and kept all things on his part and behalf to be performed, fulfilled

and kept, according to the tenor and effect, true intent and meaning of said inquisition." This general averment of performance by the plaintiff is sufficient; it was not necessary to aver specifically that he offered himself ready and willing to permit the defendant to enter upon his land for the purpose of performing the work.

By the terms of the inquisition, the appellant was bound to construct the trestle as located on the plat, a part thereof being located on the land of the appellee, his consenting to the terms of the inquisition imposed an obligation upon him to permit the other party to enter upon his land for that purpose, a general averment of performance of everything on his part to be done, implies that he consented to such entry on his land. If on the contrary he had withheld his assent, or prevented the appellant from performing the contract on its part, that was matter which the appellant might have pleaded in defence.

*Third.* While it is well settled that it is the duty of the jury, in condemnation proceedings, to award compensation to the land owner in *money,* and that they have no power to impose terms and conditions upon the condemning company without its consent; it is equally well settled that where such terms and conditions are prescribed in the inquisition, enter into the estimate of damages, and are assented to by the parties, they are binding and constitute a contract between them. We refer to *Mills on Eminent Domain,* sec. 112, where the authorities are cited. It is correctly said by the author "Compensation is ordinarily to be made in money, yet reservations of rights to owners are favored, and the condemning party may ratify an award a part of which requires certain improvements to be made for the benefit of the owner. The reservation of rights to the owner is only carrying out the spirit of the law, that the public improvement shall be made with the least damage to private individ-

uals. These conditions and reservations cannot be fixed against the will of the parties."

But it has been argued that reservations and conditions of this kind are never binding, except so far as they relate exclusively to the land condemned, as where some improvement is to be made thereon, or some easement therein is reserved to the owner; and as in this case, the structure required to be erected was partly outside of the property condemned, the condition is not binding upon the appellant.

There appears to us to be nothing in reason to distinguish the present case from the rule above stated.

The conditions prescribed derive their force entirely from the consent and agreement of the parties. The work required to be done is on *their* land; so far as it is located outside of the lines of condemnation, it is contiguous thereto, and connected directly with the subject-matter upon which the jury were called to decide, *to wit*, the compensation to be awarded to the appellee for taking his land, and destroying or removing his structure thereon necessary for the prosecution of his business.

In our opinion the matters alleged in the declaration constitute a legal cause of action, and the demurrer thereto was properly overruled.

The *third* and *fifth* pleas were ruled bad on demurrer. The former alleges as an excuse for the failure of the appellant to connect the switch or trestle of the plaintiff with the Cumberland and Pennsylvania Railroad, that the said Railroad Company refused to permit the appellant to make such connection, although the appellant has ever since, with reasonable diligence, endeavored to effect such connection. And the *fifth plea* alleges that "the plaintiff failed to obtain the permission of the Cumberland and Pennsylvania Railroad Company to have its tracks connected with said trestle though the defendant requested him so to do."

According to the true construction of the contract, the duty of obtaining the assent of the Cumberland and Pennsylvania Railroad Company to the proposed connection with its road, did not rest upon the appellee, but was assumed by the appellant, and therefore the demurrer to the *fifth* plea was well sustained.

The appellant having, by agreeing to the terms of the inquisition, undertaken unconditionally to make the connection for the appellee, with the Cumberland and Pennsylvania Railroad cannot be excused by reason of the refusal of that Company to permit such connection—"If the thing promised be possible in itself, it is no excuse that the promisor became unable to perform it by causes beyond his own control, for it was his own fault to run the risk of undertaking unconditionally to fulfil a promise, when he might have guarded himself by the terms of his contract." *Benjamin on Sales,* sec. 570, (3rd *Am. Ed.*;) *Kribs vs. Jones,* 44 *Md.,* 406. There was no error in sustaining the demurrer to the *third plea.*

It follows from what has been said in disposing of the pleadings, that the *first prayer* of the appellee was properly granted. Some objection has been made to it, because it submitted to the jury to determine whether, under the contract, it was the duty of the plaintiff or of the defendant to obtain the assent of the Cumberland and Pennsylvania Railroad Company, to make the proposed connection with its road, thereby submitting to the jury a question of law; but as the prayer was not excepted to, especially on that ground in the Court below, the objection cannot be taken in this Court. *Rule* 4, 29 *Md.,* 2.

As the obligation to make the connection rested upon the appellant, under the contract, the prayer is not open to objection, because it simply required the jury to find, (if, in their opinion, it was the plaintiff's duty to procure the consent of the Cumberland and Pennsylvania Railroad Company to the connection,) that he had not failed

to do so, instead of requiring them to find affirmatively that he had procured such consent.

The *second prayer* of the appellee, which was granted, is free from objection.   The term "*forthwith*" in the contract was properly construed by the Circuit Court to mean "*in a reasonable time;*" and if the jury found the facts stated in the *second prayer*, they were properly instructed that they might find that "the defendant had a reasonable time in which to erect the said trestle for the plaintiff."

It appears from the record that before the proceedings for condemnation were taken, the appellee had and used a connection of his switch and trestle, with the Cumberland and Pennsylvania Railroad, which he was entitled to maintain in perpetuity, and evidence was given tending to prove that it was practicable for the appellant so to construct the trestle, provided for in the inquisition as to connect the same with the Cumberland and Pennsylvania Railroad, at the same point where the appellee's connection therewith formerly existed.

It further appeared that certain legal proceedings had been instituted against the appellant, under which an injunction had been issued, which fact was relied on by the appellant as an excuse for its delay, and failure to perform its contract with the appellee.

By the agreement of counsel, contained in the record, it appears that "the appellant, during the time the injunction case referred to was pending, built its road and was not in any way delayed by the injunction, except that it was unable to have certain inquisition cases against the Baltimore and Ohio Railroad Company, and the Cumberland and Pennsylvania Railroad Company, confirmed by the Circuit Court, until after the injunction case was finally determined by the Court of Appeals," which final determination was made in December 1880.

In view of the facts above stated, the *fourth prayer* of the appellee was granted, and we think the jury were thereby

correctly instructed, if they found the facts therein enumerated, "that the injunction offered in evidence by the defendant affords no good or valid reason or excuse for not having erected plaintiff's trestle, and for not having made the said connections."

For the reasons stated in passing upon the *third* plea, it was not error to reject the appellant's *first prayer*, which relies for defence upon the continued refusal of the Cumberland and Pennsylvania Railroad Company, to permit the proposed connection to be made with its road, this refusal, as before said, does not furnish to the appellant a valid legal excuse for its failure to perform its contract. For the same reason, the appellant's *second prayer* was properly refused. This prayer was also defective, because in submitting to the jury to determine whether the appellant had a reasonable time for performing its contract, it omitted to enumerate a material fact, which had been admitted, *viz.*, "That the appellant had not in any way been delayed in constructing its road by the pendency of the injunction proceedings."

We are next to consider whether there was error in the rulings of the Circuit Court, set out in the *first, second* and *third* bills of exception.

The appellant was bound under the contract, to construct for the appellee, a trestle upon the line described on the plat referred to in the inquisition, the appellee was not legally bound to accept in lieu thereof, a trestle erected in another place, fifty feet from that line, upon the land of the Cumberland and Pennsylvania Railroad Company, and which Company, according to the evidence, refused to ship coal over it, unless the appellee would agree to pay rent; the evidence offered in the *second bill of exceptions* was therefore inadmissible. And for a like reason it was not error to sustain the objection made by the appellee to the testimony offered in the *third bill of exceptions.*

The testimony mentioned in the *first bill of exceptions*, was objected to by the appellant as inadmissible, because the loss of profits alleged to have been suffered by the appellee, in consequence of the breach of contract by the appellant, was merely speculative and contingent, and therefore, too uncertain to furnish a standard or measure of damages.

It is not necessary, in our opinion, to decide that question. Conceding the objection to the testimony to be well founded, the appellant is not entitled to a reversal of the judgment for that cause; for the reason, that according to our construction of the terms of the inquisition, the sum of $1500, thereby awarded to the appellee, is not in the nature of a penalty; but is liquidated damages, or a fixed sum ascertained by the jury, to be paid by the appellant to the appellee, in case the former shall fail to perform the conditions therein specified. And as the verdict and judgment are for $1200 only, the appellant was not injured by the admission of the testimony stated in the *first bill of exceptions*.

That the sum of $1500 is in the nature of liquidated damages, is in our judgment, clear from the terms of the inquisition.

The jury in estimating the damages, award to the appellee $600 in money, and in addition thereto, award and determine that the appellant shall do and perform certain things for the benefit of the appellee; and "in case of non-compliance with or breach of these conditions," they award (the additional sum of) "$1500 damages to the appellee for said breach or non-compliance therewith." That is to say, to perform the conditions required, or to pay $1500, in lieu thereof.

In *Geiger vs. The Western Maryland R. R. Co.*, 41 *Md.*, 4, in which a question of this kind arose, and a number of authorities were cited, it was stated as a rule deduced from the decided cases, "that where the parties

have declared in clear and unambiguous terms, that a certain sum shall be paid by way of compensation, upon a breach of the contract, or where the covenant is to do several acts, the damages arising from the breach of which are uncertain, and incapable of being ascertained by any fixed pecuniary standard, and especially where the contract provides that the sum so named shall be paid as *liquidated damages,* the sum so fixed and agreed upon will be considered as compensation for damages resulting from the breach, and not as a penalty."

In our opinion, the case at bar falls within the rule above stated. We refer also to 2 *Sedgwick on the Measure of Damages,* (7th Edition,) marginal page [421,] *et seq.,* where the cases are collected, and the rules deducible therefrom are clearly stated. The *second rule* laid down by the author is as follows:

"When the agreement is in the alternative, to do some particular thing, or pay a given sum of money, the Court will hold the party failing, to have had his election, and compel him to pay the money."

The present case falls also within this rule. .

Being of opinion for the reasons stated, that there is no valid legal ground for a reversal of the judgment of the Circuit Court, it will be affirmed.

*Judgment affirmed.*

(Decided 12th April, 1882.)