ERNEST W. WRIGHT ET AL. *v.* FLORENCE TROTTA ET AL.

[No. 253, September Term, 1976.]

*Decided December 29, 1976.*

310

The cause was argued before DAVIDSON, MOORE and MELVIN, JJ.

*Mary Ellen Brooke* for appellants.

*Edwin J. Wolf,* with whom were *Archibald Eccleston, III,* and *Eccleston, Seidler & Miller* on the brief, for appellees Florence Trotta and Alphonso John Trotta, personal representatives of the estate of Frank J. Trotta. *Joseph P. Rieger* for other appellees.

MELVIN, J., delivered the opinion of the Court.

On 8 January 1974, the appellants, Ernest W. Wright and his wife, Oreva C. Wright, filed a second amended bill of complaint in the Circuit Court of Baltimore City seeking, among other things, an accounting of sums allegedly due them under a "percentage rental" clause in a "Lease Agreement" with Frank J. Trotta and Florence Trotta, his wife, two of the appellees here. After lengthy pre-trial proceedings,[1] the case came on for trial before the chancellor on 2 February 1976. The evidence submitted to the chancellor consisted of various exhibits and stipulations of the parties. No testimony was taken or depositions offered. By decree dated 26 February 1976, the chancellor dismissed the second amended bill with prejudice and this appeal followed.

By the "Lease Agreement", dated 19 June 1970, the Wrights leased to the Trottas premises in Baltimore City known as No. 2910 Edmondson Avenue, improved by a two-story brick building, for a term beginning 1 July 1970 and ending 30 June 1976, to be followed by another term beginning 1 July 1976 and ending 30 June 1980. The lease provided that "[t]hese consecutive terms shall end and begin, respectively, without notice and each is noncancellable".

Prior to leasing 2910 Edmondson Avenue to the Trottas,

---

1. The original bill of complaint was filed 26 July 1971.

Mr. Wright had used the premises as headquarters for selling memberships in his "Car Care Club", an automobile club that apparently offered various services to its motorist members, such as payment for legal services incurred by members and payment for towing and emergency road services.

Also located at 2910 Edmondson Avenue, prior to the lease, was Broker's Insurance Service, an insurance agency operated by Dianne D. McNaney, Mr. Wright's daughter, who then held a valid license to sell insurance. Mr. Wright's insurance license was cancelled in 1969. On the same date the lease was executed McNaney sold her insurance business to Mr. Trotta. The sales agreement provided that within 15 days of the date of the lease Trotta "shall form a corporation to conduct a general insurance agency" and that he "assign this Agreement to said Corporation and . . . have the Corporation assume the obligations imposed upon the Buyer by this Agreement . . . ."

The Lease Agreement between the Wrights and the Trottas likewise required the Trottas to form a corporation "which shall conduct the business of a general insurance agency" and a second corporation to "conduct the business of an automobile, travel or motorists' service club", and to assign the lease to both corporations "jointly and severally".

The rent clause of the lease provided for a "fixed rental" plus a "percentage rental" for each term of the lease. In pertinent part the rent clause for the first term reads as follows:

"(a) Fixed Rental: the yearly sum of three thousand ($3,000.00) dollars in monthly installments, each in advance in the amount of Two hundred Fifty ($250.00) dollars, beginning for the first thereof on the first day of July, 1970, and continuing thereafter on the first day of each succeeding month during the continuation of this Lease;

(b) Percentage Rental: the further sums of money equal to the percentages of 'gross sales' or

'gross writings' or by whatever name the businesses of the Lessees shall be known, as follows:

(1) a sum equal to two and one-half (2¹/₂%) percent of the gross premiums on *all insurance policies written, by or through the insurance business conducted at the demised premises.*

(2) a sum equal to twenty-five (25%) percent of the fee — by what ever name it be known — charged for *each automobile, travel or motorists' service club membership written by, through and/or for the Lessees in the State of Maryland;* and

(3) a sum equal to five (5%) percent of the fee — by whatever name it be known — charged for each automobile, travel or motorists' club membership written by, through and/or for the Lessees for *residents of States other than Maryland.*

The aforesaid percentage rentals are cumulative, not only each with the other, but also with the fixed rental specified in sub-paragraph (a) of this section.

As of the close of business on Friday of each week during the continuation of this Lease, and beginning for the first thereof on June 26th, 1970, the Lessees shall prepare and deliver to the Lessors at the place then fixed for payment of Rent, a sworn statement of gross writings of insurance policies and auto club memberships — as immediately hereinbefore defined — for the week then just ended. With each such weekly statement, the Lessees shall pay the percentage rental for that week, calculated as hereinbefore specified." (Emphasis added.)

By an addendum to the lease, the Trottas "assume[d] the obligations of any memberships in the Car Care Club existing at the date of this lease".

In August 1970, pursuant to the "Lease Agreement" the lease was assigned to Broker's Insurance Service, Inc. and International Travel Club, Inc., both of which were

apparently wholly owned and controlled by Mr. Trotta and through which he operated both an insurance agency and a motor club business at the leased premises on Edmondson Avenue. It appears from the stipulations submitted at trial that Mr. Trotta also owned and operated another insurance agency known as Howard Insurance Service, located at 635-37 North Howard Street in Baltimore City. The record does not reveal when this latter agency was formed.

It was further stipulated that "there has been an accounting of the rents . . . in accord with the percentage rental agreement through and up to August 7, 1971 on a weekly basis, but there has been no accounting since then"; that the "base rent" (i.e. the "fixed rental" of $250 per month) had been paid through November 1972; that "on December 6th, 1973 no business was being conducted on the premises known as 2910 Edmondson Avenue; and that "the tenancy was terminated on 2910 Edmondson Avenue by a letter dated May 20, 1974 . . . from [the Trottas' trustee] to Mr. Frank J. Trotta". It further appears from the exhibits that the Wrights' trustee sold the property on May 31, 1974, to a party unrelated to these proceedings.

I

The chancellor dismissed the second amended bill of complaint because he felt, as argued by appellees, that payments to the Wrights under the "percentage rental" clause of the lease was a violation of § 167 of Art. 48A of the Maryland Code (1972 Repl. vol.) and therefore the Wrights could not enforce the clause. Section 167 reads in pertinent part as follows:

> "(a) *License required to act as agent or broker.* — No person shall in this State act as or hold himself out to be an agent or broker, nor shall any person in any manner solicit, negotiate, make or procure insurance covering subjects of insurance resident, located or to be performed in this State, unless then licensed therefor pursuant to this subtitle or not subject to the provisions hereof, except as otherwise provided in this article.

(b) *Agent or broker not to solicit, etc., kinds of insurance for which he is not licensed.* — No agent or broker shall solicit or take application for, negotiate, procure or place for others any kind of insurance for which he is not then qualified and licensed.

(c) *Commissions, fees, etc., not to be paid to unlicensed persons.* — No commission, fee, reward, rebate or other consideration *for procuring or influencing the procurement of any insurance shall be paid, directly or indirectly, to any person who is not then licensed* pursuant to the provisions of this subtitle, except as to the kinds of insurance, types of insurers and transactions exempted from the provisions of this subtitle by §§ 165 and 171; provided, however, that in the case of life insurance and health insurance the provisions of this section shall not prevent the payment or receipt of commissions on renewal premiums on existing policies or other deferred commissions to or by any person solely because such person has ceased to hold a license to act as agent, or broker except as otherwise provided by this article.

(d) *Penalty.* — Any person who violates any provision of this section shall be guilty of misdemeanor, and upon conviction thereof shall be subject to a fine of not more than $500.00 or to imprisonment for not more than 6 months, or both, for each such violation." (Emphasis added).

It is clear that the requirement of the statute that an insurance agent or broker be licensed by the State is not merely for the purpose of raising revenue. The license is required primarily for the protection of the public and to prevent improper persons from acting as brokers or agents, *Goldsmith v. Mfgrs.' Liability Ins. Co.*, 132 Md. 283, 103 A. 627 (1918); therefore, any contract entered into by an unlicensed person requiring compensation to be paid him "directly or indirectly", for his services in "procuring or influencing the procurement of any insurance" can not be

enforced by such person. *See Goldsmith, supra,* pp. 286-289; 17 Am. Jur. 2d; *Contracts,* § 155 et seq. (1964).

Appellees argue that the Wrights "were using the guise of a Lease to profit from the sale of insurance, something Appellants could not do directly because they did not have a license". Under the terms of the "Lease Agreement", there is no doubt that the more insurance and motor club memberships [2] the lessees sold the more the Wrights would profit. It does not follow, however, that payment by the Trottas or receipt by the Wrights of the "percentage rental" pursuant to the "Lease Agreement" is violative of § 167. There is nothing in the lease requiring, directly or indirectly, that the Wrights be paid anything "for procuring or influencing the procurement of any insurance"; nor is there any evidence that the percentage rent paid the Wrights up to 7 August 1971 or for which they seek an accounting since then, was, or is, in return "for procuring or influencing the procurement of any insurance". The consideration for the "percentage rent" is the use and occupancy of the leased premises, not any activity on the part of the Wrights requiring them to be licensed.

A precept now firmly established in Maryland and enunciated by the Court of Appeals almost a century ago in *Maryland Fertilizing and Manufacturing Company v. Newman,* 60 Md. 584, 588 (1883), is that

> "Parties have the right to make their contracts in what form they please, provided they consist with the law of the land; and it is the duty of the courts so to construe them, if possible, as to maintain them in their integrity and entirety."

See *Mortgage Investors of Washington v. Citizens Bank & Trust Co. of Maryland,* 29 Md. App. 591, 347 A. 2d 647 (1976), *cert. granted and affirmed,* 277 Md. 739 (1976), for the latest recognition of this principle.

---

2. For purposes of this appeal, we shall assume without deciding that at the time of the lease the sale of "motor club memberships" required an insurance license. See Code Art. 48 B, enacted 1 July 1971, and subsequent amendments thereto, for present statutory regulations concerning "Motor Clubs".

It is also firmly established that one who would avoid a contract on the ground of illegality has the burden of producing evidence to show the illegality. The rule was succinctly stated in *McNally v. Moser*, 210 Md. 127, 122 A. 2d 555 (1956):

> "It was . . . [defendants] who pleaded illegality, it is they who had the duty of producing evidence to show it, and finally, it is they who had the burden of persuading the court that they had established the illegality. One who relies upon illegality, failure of consideration or other affirmative defenses, has imposed upon him the burden of persuasion."

We find no evidence in the record before us from which the chancellor could properly find the "percentage rental" clause to be illegal. His fears that "this arrangement has all of the ingredients for a violation of the statute by way of procuring and influencing" are not enough. This is not to say that in a proper case a lease such as the one before us may not be found to be a mere sham to allow an unlicensed person to engage in activity for which regulatory statutes require him to be licensed. In the case before us, however, there is no evidence that in furtherance of the "Lease Agreement" the Wrights, or either of them, were required to or did in fact perform any act for which an insurance license is required. Indeed, the appellees do not claim that the Wrights performed or were required under the lease to perform any such acts, and there is no evidence or claim that the Trottas or their corporate assignees of the lease, in engaging in the insurance and motor club businesses, were acting as agents for the unlicensed Wrights, or that the Wrights otherwise exercised any control over those businesses.

The contention of the appellees is that because Mr. Wright *discontinued* to sell motor club memberships, because his daughter sold her insurance business, and because the tenants were required to use the premises for the conduct of an insurance business and a motor club business, the "percentage rental" clause is somehow illegal and may not be enforced. We cannot agree.

A "percentage rental" clause in a lease is, of course, not *per se* illegal; nor does such a clause "affect the validity of the relationship of landlord and tenant created by the lease, absent a union of the essential provisions of another distinct legal relationship". 49 Am. Jur. 2d. *Landlord & Tenant*, § 519 (1970). In the case *sub judice* there is no claim or evidence that the relationship created by the "Lease Agreement" was anything other than that of landlord and tenant. Under these circumstances, the fact that a landlord does not have a license to engage in the business conducted by the tenant on the leased premises does not render a "percentage rental" clause in a lease unenforceable for illegality.

For the reasons stated, we hold that the chancellor erred in dismissing the second amended bill of complaint against the appellees, Alphonso John Trotta and Florence Kwiatkowski Trotta (the personal representatives of Frank J. Trotta) [3] Florence Trotta, Brokers Insurance Service, Inc. and International Travel Club, Inc. As to these appellees we think the Wrights are entitled to an accounting of the "percentage rental" due under the "Lease Agreement" and as to them the case will be remanded for further proceedings.

## II

As to the other appellees captioned as respondents in the second-amended bill of complaint, we shall affirm the decree of dismissal. These other appellees are Howard Insurance Service, Inc.,[4] Charles E. Chlan and Howard Travel Club, Inc.

The gravamen of the allegations in the second-amended bill of complaint against Howard Insurance Service is that insurance business that allegedly "originated at No. 2910 Edmondson Ave." was "deliberately" referred by the tenants "to the offices at Nos. 635-637 North Howard Street, at which latter address such insurance business has been written by Brokers Insurance Services, Inc. *and/or Howard*

---

3. Mr. Trotta died after the case was filed and prior to trial.

4. Although captioned "Howard Insurance Service, Inc." the parties stipulated that "Howard Insurance . . . is a sole proprietorship owned and operated by Frank J. Trotta". The pleadings were not so amended, however.

*Insurance Service*", but that Howard Insurance Service and the other appellees "failed to account to the Complainants for such insurance business and to pay the percentage rent required .... thus deliberately defrauding the Complainants of their rightful income". As to Howard Insurance Service there was no evidence offered at trial substantiating these allegations.

As to appellees Charles E. Chlan and Howard Travel Club, Inc., of which Chlan was the controlling stockholder, the gravamen of the allegations against them is that they were also part of a "deliberate attempt . . . acting in concert with all the other Respondents . . . to defraud the Complainants of the percentage rates to which they are entitled by the terms of the aforesaid lease". After the stipulated evidence had been presented to the chancellor, the attorney for the appellants told the chancellor, ". . . that the evidence that has been introduced through stipulation would not be sufficient to support our claim against Mr. Chlan [and presumably Howard Travel Club, Inc.]. Therefore we would like to reserve the right to put on brief testimony". The chancellor replied: "When we get to his case". The record shows that appellants never did "get to" the case against Chlan or Howard Travel Club, Inc.; therefore, as to them the dismissal of the second-amended bill of complaint was entirely proper.

In this appeal, appellants nevertheless argue that their "position" against Chlan and Howard Travel Club, Inc. is "preserved" because at the trial they "had not closed the case against the Chlan Group". They do not argue that they were prevented from presenting or proffering evidence to substantiate their allegations against the "Chlan Group", only that none was presented because the "trial court . . . expressly stated that the case against the Chlan Group must stand or fall with the decision in the case against the Trotta Group". It is true that the chancellor did indicate, quite correctly we think, that if the "percentage rental" clause was unenforceable against the Trotta Group (i.e. Mrs. Trotta and Mr. Trotta's personal representative and the assignee corporations) then the derivative claims against all other appellees-respondents would necessarily fail. This truism,

however, did not prevent the appellants from offering evidence against the other appellees.

The case below was not presented pursuant to Md. Rule 502 as a separate trial of an issue at law. It was therefore incumbent upon the appellants to present whatever evidence they had to prove their case against all the appellees. As to those appellees against whom they failed to present such evidence nothing is "preserved" for yet another "day in court".

### III

The appellants further contend that "the trial court erred when it refused to allow the appellants to amend their bill of complaint after hearing on the merits, but before a decree was entered".

On 5 February 1976, three days after the trial on the merits and prior to the entry of the decree of 26 February 1976 dismissing the second-amended bill of complaint, appellants filed a pleading entitled "Still Further Amendments to the Second Amended Bill of Complaint — As Amended and as Further Amended — For an Accounting, For Specific Performance of a Contract, Etc." The amendments added to the second-amended bill of complaint allegations against the tenants (Mrs. Trotta and Mr. Trotta's personal representatives and the two assignee corporations) that the "fixed rental" called for by the "Lease Agreement" had not been · paid since November, 1972, and asked for a money judgment against them for $7270, the amount alleged to be due therefor. On 6 February 1976 the tenants filed a "Motion Ne Recipiatur or To Strike" and a request for a hearing thereon. On 26 February 1976, the chancellor, without hearing, granted appellees' motion. Appellants have appealed from the chancellor's order granting the motion.

Amendments to actions at law or equity are governed by Md. Rule 320 which provides, in pertinent part:

> "a. *Scope and Purpose.*
>
> 1. Process, Pleadings and Record.
> Unless the court otherwise directs any of the

proceedings, including process, pleadings, and record, may be amended so that the case may be tried on its merits.

\* \* \*

c. *Time for Amendment.*

1. Before Trial — Trial Before Court.

*In a case heard or tried before the court without a jury, any amendment may be made at any time before a final judgment or decree is entered.*

\* \* \*

d. *Procedure.*

1. Leave of Court Not Necessary.

An amendment may be made without leave of court subject to the right of objection made pursuant to Rule 320 d 5.
(Amended July 1, 1974.)

\* \* \*

5. Objections to Amendment.

Objection to an amendment may be made by motion to strike filed within fifteen (15) days. *Amendments shall be freely permitted in order to promote justice."*
(Added July 1, 1974.)

It is clear from the record and briefs that the tenants' only defense to non-payment of rent was their erroneous contention that "the Lease in its entirety was illegal" and therefore unenforceable. This circumstance and the stipulated fact that the base rent had been paid only through November, 1972 and the further stipulated fact that the tenancy was "terminated" on 20 May 1974, indicate a valid claim for at least part of the base rent claimed by the disallowed amendments, i. e., the base rent from 1 December 1972 to 20 May 1974.

As we pointed out in *Staub v. Staub*, 31 Md. App. 478, 480 (1976):

"The Court of Appeals has repeatedly held that amendments should be freely permitted in order

better to promote the ends of justice. *Dart Drug Corp. v. Hechinger Co.*, 272 Md. 15, 320 A. 2d 266 (1974); *Preissman v. Harmatz*, 264 Md. 715, 288 A. 2d 180 (1972); *Earl v. Anchor Pontiac Buick, Inc.*, 246 Md. 653, 229 A. 2d 412 (1967); *Jacobson v. Julian*, 246 Md. 549, 229 A. 2d 108 (1967). This Court has likewise trod the same path. *Zell v. Zell*, 12 Md. App. 563, 280 A. 2d 22 (1971). An Amendment should not be allowed, however, if it will result in prejudice to the opponent or will unduly delay the results. *Robertson v. Davis*, 271 Md. 708, 319 A. 2d 816 (1974)."

In *Crowe v. Houseworth*, 272 Md. 481, 325 A. 2d 592 (1974), cited in *Staub*, the Court of Appeals said:

"One of the relatively recent, but nonetheless dramatic developments in the law, is the increased liberality with which amendments of pleadings may be allowed, with or without leave of court, if the ends of justice are served. Generally, this has been accomplished by either statute or rule. C. Clark, Law of Code Pleading § 115, at 708-15 (2d ed. 1947)." 272 Md. at 485.

As stated by the Court of Appeals in *Robertson v. Davis*, 271 Md. 708, at 709, "The objective of these rules is to facilitate the attainment of a just, speedy and inexpensive determination of all disputes between the same parties".

While we recognize that ". . . the allowance or refusal of an amendment is ordinarily within the discretion of a trial court and that no appeal will lie from the action, in the absence of a clear showing of an abuse of discretion," 272 Md. at 489, we think, in view of the "increased liberality" allowing amendments as evidenced by the Maryland Rules and decisions applying them, that under the circumstances of this case the amendments should have been allowed. In the circumstances, we fail to see how the amendments could result "in prejudice to the opponent or unduly delay the results". *Staub v. Staub, supra.* Consequently, the order of 26 February 1976 granting appellees' motion ne recipiatur or

to strike will be reversed. This does not mean, however, that the full amount of the base rent claimed by the amendments should be awarded the appellants. The amount awarded should be restricted to the proof as it existed at the time of trial.

> *Decree of 26 February 1976 affirmed as to appellees Howard Insurance Service, Inc., Charles E. Chlan and Howard Travel Club, Inc.; as to appellees, Alphonso John Trotta and Florence Kwiatkowski Trotta (personal representatives of Frank J. Trotta), Florence Trotta, Brokers Insurance Service, Inc., and International Travel Club, Inc., decree of 26 February 1976 reversed;*
>
> *Order of 26 February 1976 granting appellees' motion ne recipiatur or to strike reversed;*
>
> *Case remanded for further proceedings not inconsistent with this opinion.*
>
> *Costs to be paid two-thirds by appellees (except Howard Insurance Service, Inc., Charles E. Chlan and Howard Travel Club, Inc.) and one-third by appellants.*