519 A.2d 816

Harry F. STUEBER, et ux.

v.

**ARROWHEAD FARM ESTATES LIMITED PARTNERSHIP, et al.**

**No. 590, Sept. Term, 1986.**

Court of Special Appeals of Maryland.

Jan. 14, 1987.

Royal G. Shannonhouse, III (Leonard E. Moodispaw and Blumenthal, Wayson, Downs & Offutt, P.A., on the brief), Annapolis, for appellants.

Richard M. McGill, Upper Marlboro, for appellees.

Argued before GILBERT, C.J., and ROSALYN B. BELL and WENNER, JJ.

GILBERT, Chief Judge.

Although expressed differently by the appellants, the question posed to us is, where a contract for the sale of property provides an exclusive remedy upon breach, may a court, having found a default, nevertheless ignore that remedy and enter judgment for the errant party? We conclude that under the circumstances of this case the court is not permitted to rewrite the contract and thereby substitute its will for that of the contracting parties. Because the Circuit Court for Anne Arundel County did precisely that, we reverse its judgment and remand the matter to that court with instructions that it order reconveyance of the property to the appellants. We now explain why we take that action.

Harry K. Stueber and Lillian B. Stueber, his wife, owned 65.5 acres of land in Anne Arundel County. They apparently had obtained "sketch plan approval" for a subdivision for subsequent development of their property. The Stuebers were negotiating with a prospective financial backer, Mr. Taylor. According to Mr. Stueber, he and his wife "were put in contact with Mrs. [Judith H.] Mullen" who "acted as our attorney" in "several possible sales to developers." [1]

---

1. Mrs. Mullen was not counsel for the Stuebers in the matter of the contract now before us. The purchase agreement upon which this litigation is grounded declares:
   "9. COMMISSIONS AND ATTORNEY

Stueber was negotiating with Mr. Taylor, and he and Taylor went to see Mrs. Mullen in order to discuss "the parameters of the project." When Mrs. Mullen heard the plan, she, after excusing the proposed developer, Mr. Taylor, from the room, "offered to enter into a limited partnership with" the Stuebers.[2] She said that she could develop the property faster. As a result the Stuebers opted to contract with Mrs. Mullen. She drew the necessary documents creating a limited partnership between the Stuebers as limited partners and Mrs. Mullen, her husband William, and Jacob Brentzel, Jr., as general partners. Later Mrs. Mullen advised the Stuebers that it would be better from a tax standpoint if the Stuebers "stepped out of the partnership and just sold the property." The Stuebers followed Mullen's advice.

Thereafter a contract of sale was presented to the Stuebers by Arrowhead Farm Estates Limited Partnership and its general partners, Brentzel and the Mullens (all collectively hereinafter called Arrowhead). According to the terms of the agreement, the Stuebers sold the 65.5 acres of Arrowhead for "Fifty Percent (50%) of the net proceeds of the sale of each subdivision lot" plus a dwelling to be erected by Arrowhead at the "builder's costs" of $75,000 and a separate "two acre tract known as Lot 23 or Lot 25."

Arrowhead Farm Estates, for development purposes, was initially divided into three sections consisting of a total of 28 lots.

The contract set forth that section one of Arrowhead Estates would "be fully developed within eighteen (18) months of the date of the record of plat." Section two was

---

All parties acknowledge that there is no broker in the procurement of this transaction. All parties further acknowledge that Judith H. Mullen is an attorney and a party hereto and as such is not serving as an attorney for any other party hereto."

**2.** *See* Code of Professional Responsibility: DR 4–101(B)(3) and DR 5–102(A); *see also* Md.Rule 1230 implementing Maryland Rules of Professional Conduct: Rules 1.7 and 1.8.

to be completed within eighteen months of the completion of section one, and section three, within eighteen months of the completion of section two. The plat was recorded on July 22, 1982. Under the terms of the contract, the "countdown" was triggered and section one was required to be completed on or before January 21, 1984. It was not.

Since its inception the contract of sale seems to have undergone some modifications. One alteration was that the development of the property was changed from three stages to two. The Stuebers were not consulted relative to the change. After the first eighteen month time frame had expired without the completion of the development of section one, the Stuebers filed a complaint in which they asked the court to compel conveyance to them of the 65.5 acres less the lots previously conveyed by Arrowhead.

The Stuebers' complaint generated activity on the part of Arrowhead. The testimony indicates that things that should have been done during the first eighteen month time frame were then accomplished. By the time the case came to trial, Arrowhead had, according to its testimony, expended approximately $115,000 in roads and "site improvements." Prior to the filing of the complaint, Arrowhead had completed some preliminary work such as engineering plans and the clearing of brush.

The Stuebers grounded their complaint against Arrowhead on the basis of Section 7 of the contract of sale. That section provided in pertinent part:

"DEFAULT BY PURCHASERS—PARTNERSHIP. *In the event that the Purchasers—Partnership default on any provision of this Agreement, all remaining lots shall be deeded back to the Sellers at no cost or expense to them, including, but not limited to transfer and documentary taxes.* ... The Partnership will also be responsible for any and all restoration costs as may be required by State and/or County authorities. ... *This*

*clause represents the Sellers' entire legal remedy in the event of a default hereunder."* (emphasis added).

At the conclusion of the evidence the chancellor opined: "I do think there was a default in the final analysis as to living up to the terms of the Agreement but I don't think it's a default the remedy for which is the deeding back of all of the remaining property because I think there's certainly mitigating circumstances that would prevent this unfair result when I don't think that the sellers have been that substantially hurt by the delay.

Now, that they have been hurt is quite possible and I think damages are appropriate rather than a rescission of the whole Contract and to that extent I think a further hearing should be held to determine what damages, if any, resulted from the delay from the time schedule that was set forth in the Agreement and how that can be resolved. But, I don't think there should be any transfer of property or return to square one based on what I've heard. So, if the parties wish to do that, I will be happy to do that." [3]

Despite finding a default by Arrowhead, the trial judge concluded that "specific performance of the reconveyance clause is too harsh a remedy for Defendants' default." The chancellor denied relief and ordered that judgment be entered in favor of the defendants. This appeal ensued.

It is well settled that whenever there is a contract and breach of that contract "the trial court *must assess some damages,* nominal or substantial as it shall find to be proper on the law" and the evidence. *M & R Builders v. Michael,* 215 Md. 340, 344–45, 138 A.2d 350 (1958) (emphasis in original); Brantley on Contracts (2d ed. 1912) Ch. V § 197; Restatement Law of Contracts § 327; Clark on Contracts (4th ed.) § 670. Even if we did not think the trial court erred with respect to specific performance, we would be

---

**3.** Subsequently the trial judge decided that "damages ... are [too] speculative."

compelled by the holding in *M & R Builders* to reverse the judgment in the case *sub judice* inasmuch as *some damages* were mandated by the default.

The trial judge expounded in his oral opinion that the court "was not in a position where it should rewrite contracts ... entered into between responsible parties." Yet, that is precisely what the court did. Notwithstanding the clear and unambiguous language of the agreement that in the event of default by the purchaser the property would be reconveyed to the seller and that the reconveyance was the "Sellers' entire legal remedy," the trial judge read that clause out of the contract and suggested monetary damages which he then denied as too speculative.

We share the trial court's recognition that Arrowhead will suffer substantial damages for its default. Yet, it was Arrowhead, a limited partnership of persons skilled in the law and business who agreed to the terms of the contract of purchase. It was Arrowhead who agreed to the reconveyance language. It was Arrowhead who, inferentially at least, limited the Stuebers to reconveyance as their only remedy in the event of default. It was Arrowhead, not the Stuebers, who, after the complaint was filed, expended large sums of money, thereby creating an additional hardship for itself.

■ When the terms of a contract are clear and unambiguous, the court may not rewrite the contract for the parties even to avoid a hardship. *Hawkins v. Pub. Sev. Mutual Ins. Co.*, 192 Md. 68, 63 A.2d 606 (1949); *Landwehr v. Continental Life Ins. Co.*, 159 Md. 207, 150 A. 732 (1930); *Brownstein v. New York Life Ins. Co.*, 158 Md. 51, 148 A. 273 (1927); *Cottman v. Department of Natural Resources*, 44 Md.App. 224, 407 A.2d 802 (1979), *appeal after remand*, 51 Md.App. 380, 443 A.2d 638 (1982); *Wright v. Trotta*, 34 Md.App. 309, 367 A.2d 557 (1976); *Mortgage Investors of Washington v. Citizens Bank & Trust Co. of Maryland*, 29 Md.App. 591, 349 A.2d 647, *affirmed*, 278 Md. 505, 366 A.2d 47 (1976).

■ There was no ambiguity in the contract between the parties in this case. Arrowhead was to develop a section of the property within eighteen months. Although there was some discussion and alteration of the purchase contract, the eighteen month period for completion of phase one, whether by oversight, neglect or otherwise on the part of Arrowhead, remained constant. Difficulty in meeting a time schedule is no excuse for nonperformance of the contract. The test is not whether timely performance was difficult but whether it was possible. The Court of Appeals in *Pennsylvania R.R. Co. v. Reichert,* 58 Md. 261, 274 (1882), quoted, with approval, Benjamin on Sales § 570. There it is said:

> "If the thing promised be possible in itself, it is no excuse that the promisor became unable to perform it, by causes beyond his own control, for it was his own fault to run the risk of undertaking unconditionally, to fulfill a promise, when he might have guarded himself by the terms of his contract."

*See also Kribs v. Jones,* 44 Md. 396, 406 (1976); W.L. Clark Jr. *Handbook on the Law of Contracts* (4th ed. 1931) § 258.

Neither in the contract of sale nor in any subsequent modification did Arrowhead guard against nonperformance occasioned by difficulties in meeting time schedules. Arrowhead's failure to protect itself resulted, unquestionably, in a hardship—albeit one of its own making. Arrowhead, like Dr. Frankenstein, may be undone by the monster it created.[4]

It is beyond dispute that Arrowhead did not abide by the contract but, in the trial judge's words, defaulted on the agreement. The default triggered the operation of the reconveyance clause. The chancellor's refusal to order

---

**4.** From a book by Mary Wollstonecraft Shelley, *Frankenstein, or the Modern Prometheus* (1818). Dr. Frankenstein made the monster. The monster was not given a name but through error, it is popularly, albeit incorrectly, referred to as Frankenstein.

reconveyance of the property from Arrowhead to the Stuebers was reversible error.

JUDGMENT REVERSED.  CASE REMANDED TO THE CIRCUIT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

COSTS TO BE PAID BY APPELLEES.